383 So.2d 1271 (1980)
Frank Harlan AUGUSTINE, Plaintiff-Appellant,
v.
WASHINGTON PARISH POLICE JURY et al., Defendant-Appellee.
Frank Harlan AUGUSTINE, Plaintiff-Appellant,
v.
Charley SPEARS et al., Defendant-Appellee.
Nos. 12976, 12977.
Court of Appeal of Louisiana, First Circuit.
February 25, 1980.
*1272 Lemuel E. Hawsey, III, and Glenn A. Koepp, Baton Rouge, for plaintiff-appellant.
John W. Anthony of Talley, Anthony, Hughes & Knight, Bogalusa, for Washington Parish Police Jury and Commercial Union Ins. Co.
Marion B. Farmer, Covington, for Charley Spears.
Before EDWARDS, LEAR and SARTAIN, JJ.
SARTAIN, Judge.
The incident giving rise to this litigation was an altercation between Frank H. Augustine (Augustine) and Charley Spears (Spears), both of whom at the time were employees of the Washington Parish Police Jury (Police Jury). Augustine brought suit[1] against the Police Jury and Commercial Union Insurance Company (Commercial Union), the Police Jury's workmen's compensation insurance carrier, for compensation benefits under the act. He also brought a delictual action[2] against Spears and Commercial Union, which also carried *1273 the liability insurance for the Police Jury. These suits were consolidated for trial. The delictual action was tried to the jury and the workmen's compensation case was tried to the district judge. Augustine now appeals from adverse judgments in both suits.[3] We affirm.
Before we address the issues on the merits, it is necessary that we dispose of two preliminary matters relating to the delictual action. Plaintiff re-urged at oral argument in this court his previously rejected motion to remand. He contends that the record is materially deficient in that it fails to contain a transcript of the voir dire examination, the opening and closing arguments of counsel, and several conferences held in chambers. While these items are not included in the transcript, counsel fails to show or even allege in his motion that improper questions were propounded to the prospective petit jurors, or that any prejudicial statements were made in the opening and closing arguments of opposing counsel, or to even identify the subject of those matters he avers were concluded in chambers and should have been included in the appellate record. It was for this reason that his earlier motion to remand was denied. Absent any further particularization as to error, his instant motion is without merit.
C.C.P. art. 2128 provides in pertinent part: "The form and content of the record on appeal shall be in accordance with the rules of the appellate court, except as provided in the constitution." Rule 1, Section 3, of the Uniform RulesCourts of Appeal, prescribes in detail the form and content routinely required of the record on appeal. Voir dire examination, opening and closing arguments, and routine preliminary matters agreed to in chambers are not listed as required contents of the record. They can be made a part of the record by timely request of counsel at the hearing on the merits or by raising an issue on appeal as to error in the form and content of the voir dire examination or the arguments of counsel. Fontenot v. Garland, 352 So.2d 251 (La.App. 3d Cir. 1977). Just the mere absence of these items in the record on appeal and nothing more does not warrant or justify a remand for their ultimate transcription and inclusion in the record.
The other preliminary matter relates to defendants' motion to dismiss the appeal in the tort suit.[4] Defendants contend that the plaintiff, by filing only a motion to remand (for reasons stated above) and no brief on the merits, has abandoned his appeal in the tort suit. We deny the motion.
Defendants undoubtedly rely on Rule 7, Section 5(b)[5] of the Uniform RulesCourts of Appeal, which authorizes the intermediate appellate courts of this state to consider as abandoned and dismiss the appeal in any case in which the appellant has failed to appear or file a brief prior to the time the case is called for oral argument. The second sentence of the pertinent section of the rule, however, is abundantly clear. "Appearance" is classified as either "personal" or "the filing of a written instrument negating any intent to abandon the appeal. ..." Counsel's brief in support of his motion, filed two days before oral argument, and his appearance at oral argument re-urging the same are more than sufficient to negate any intent to abandon the appeal.

ON THE FACTS
As to be expected, there are two versions of the events leading up to the altercation between Augustine and Spears.
*1274 The record reflects that both were employed by the Police Jury as road maintenance personnel of District 3. The heavy equipment for this unit was kept at an equipment barn in Bogalusa. The normal workday was from 7:00 o'clock A.M. to 4:00 o'clock P.M. Spears, as unit supervisor, would generally arrive at 6:45 A.M., unlock the gate, and await the arrival of the crew working under his direction.
Some of the crew members arrived in their own transportation. They would remove the equipment, graders, front end loaders, and equipment trucks, from the barn, place their private vehicles in it, and then repair to the various work sites. On the Monday morning of December 1, 1975, Augustine, who was to operate a loader, was told by Spears to bring extra oil because the loader he was to use that day had developed a leak. He was also told to remove the defective part and bring it in with him that afternoon. The loader had been left over the Thanksgiving holidays on private property some distance away from the barn. From this juncture on, the factual versions of the remaining events of the day differ.
Augustine stated that he last used the loader on the previous Wednesday and that when he left it, it was not leaking oil. The machine had been used and moved over the weekend, he presumed by Spears. On his way to the new location he went by the old location and personally satisfied himself that, there being no oil on the ground, he had not been the operator to break the machine. After he had concluded his work for the day, he removed the broken line from the machine and brought it in with him. He placed it on a barrel in the barn. He claims to have arrived back at the barn around 3:20 P.M. There is no dispute over the fact that employees of the Police Jury are free to leave the barn upon their return and are not required to wait until 4:00 P.M.
Plaintiff stated that he did not leave the barn area because a fellow worker (Eugin) had not yet returned. He felt that as a courtesy to his follow employee he would go and get him if it were necessary.
Plaintiff further stated that as Spears drove up on a road grader he (Spears) started cursing him and accusing him of breaking the machine. He claims that he followed Spears into the barn to give him the broken part and as the two were returning to their respective pickup trucks Spears became more aggravated, cursed him further, and made threatening gestures toward him. Believing that Spears was about to assault him, he returned to his truck to remove his glasses. Before he could look back to Spears' direction, Spears struck him three times about the head with a hammer.
Spears' version is that he returned to the lot between 4:15 P.M. and 4:20 P.M. He was driving a grader at the time. He got off, opened the gate, removed his truck from the barn, and drove the grader into the barn. He said that immediately on his arrival Augustine started accusing him of having broken the loader. He said that Augustine followed him into the barn and then back out to where their respective pickup trucks were parked. He stated that he repeatedly told Augustine that it made no difference how the machine was broken or who broke it, that the Police Jury would pay to have it fixed and for him to go home because it was getting late. However, Augustine continued to follow and curse him. At one point, Augustine called him a "lying S. B." and, according to Spears was eyeing a pine limb that was on the ground just a few feet away. Spears invited Augustine to take off his glasses and repeat the statement. He said Augustine removed his glasses by throwing them into the cab of his pickup truck and reached down and picked up the pine limb. Believing that he (Spears) was about to be assaulted, he turned to his truck which was just a few feet away and picked up a hammer to defend himself. Augustine was then standing there knocking the mud off the limb and grinding the bark off of one end to improve his grip. He claimed that Augustine then advanced on him swinging the limb. He ducked and hit Augustine on the side of the head with the flat side of the hammer. Augustine continued to advance and swing the limb again. Spears jumped back but the limb tore the buttons from his (Spears) *1275 jacket. He hit Augustine for the second and last time with the hammer. Augustine stumbled, grabbed some sand and gravel, and threw it into his face. He continued to retreat and Augustine to follow, swinging the limb, until he (Augustine) observed that he was bleeding and broke off the encounter. Augustine got in his truck and left. Spears waited for Eugin to arrive and then he left.
The only other witness to the fight was Mrs. Eugin. Her testimony generally corroborates that of Augustine. She said she arrived at the lot between 3:15 P.M. and 4:00 P.M. She observed Augustine follow Spears into the barn and then the two of them as they walked back to their trucks. She next saw Augustine remove his glasses and place them in his truck. Spears at the time went to his truck and picked up "something." Then the next thing she saw was Spears hit Augustine before the latter had turned back around. She did not hear any of the conversation between the two because her vehicle radio was on. She was totally surprised by the turn of events and immediately left. Her testimony in other respects, however, differs from that of Augustine and Spears, such as the time of her arrival, who was actually present, her friendship with Spears, etc. It is not necessary to relate these particular facts here. They are, in our opinion, sufficient to raise the credibility question.
Both Augustine and Spears denied that there was any prior ill feeling between the two. However, evidence was offered that Spears had replaced Augustine as foreman some three months before the incident. Further, Sheldon Crow, a fellow-worker, testified that after Augustine had returned to the lot and prior to Spears' arrival, Augustine told him that he was going to wait for Spears if he had to wait "until 11:00."

TORT SUIT
We will discuss the tort action first because as we will hereinafter note, the applicable law in this type of litigation varies somewhat from the rule applied in workmen's compensation litigation. Because the judgment in the tort suit was the result of a jury verdict, we are not favored with specific findings of fact and can only look to the result. However, it is equally clear that whether the factual determination rests with the jury or judge, the scope of appellate review remains the same. "When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error." Canter v. Koehring, 283 So.2d 716, 724 (La.1973). "Manifest error" was later emphasized to mean "clearly wrong." Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979). We find that the verdict of the jury in the tort claim was neither manifestly erroneous nor clearly wrong.
It is reasonable to assume and we so find, based on our own independent review of the record, that the jury concluded that both Augustine and Spears were at fault. Augustine in provoking the fray and grabbing the pine limb, and Spears for permitting words alone to cause him to challenge Augustine to remove his glasses. When the confrontation between the two reached this point, both were intent on doing bodily harm to the other. Either could have retreated; neither did.
Our jurisprudence is now well settled that mere words alone, even though designed to excite or irritate, can not excuse a battery. Morneau v. American Oil, 272 So.2d 313 (La.1973). This rule applies equally to the recipient of the verbal abuse (Spears) and to the agitator (Augustine), where the latter accepts the challenge and both arm themselves with dangerous instrumentalities with the avowed intent of settling their differences physically.

WORKMEN'S COMPENSATION SUIT
In reviewing Augustine's claim for compensation benefits, the trial judge in his written reasons for judgment concluded that the altercation occurred after working hours and that under the circumstances Augustine was not entitled to any benefits under the act. In his written reasons for judgment, the judge a quo stated:
"When Mr. Augustine returned to the Parish barn on the afternoon of the injury *1276 and took his own private truck out of the barn, his work-day was ended and he was free to leave the premises of his employer. He had already left the broken piece of loader equipment in the barn or in Mr. Spears' truck. He had no further duty of employment in respect to that matter. He did not need to wait for the return of Mr. Spears.
Mr. Augustine's decision to remain on the premises after the completion of his work-day was entirely for personal reasons. He was under no duty whatever to await the arrival of Mr. Eugin who had not yet returned with a Parish truck. If anyone was under a duty to await Mr. Eugin's arrival it was that of the foreman, Mr. Spears.
This case is distinguishable on the facts from Gorings v. American Sugar Refining Company, 222 So.2d 530 (La.App. 4th Cir. 1969).
Ample support for the Court's decision is found in Lisonbee v. Chicago Mill and Lumber Co., 278 So.2d 5 (S.C.1973); Carter v. Lanzetta [249 La. 1098], 193 So.2d 259 (La.S.C.1966); and Blade v. Mervis, 226 So.2d 552, (La.App. 4th Cir. 1969)."
It is evident from these reasons that the trial judge did not address the legal consequences growing out of the altercation itself. Stated another way, he simply concluded that the injuries allegedly received by Augustine did not arise out of his employment because he chose to remain on the premises after his work for the day was concluded and he was privileged to leave. We cannot affirm on so narrow a holding.
If the altercation itself were removed from the facts and plaintiff was otherwise injured, i. e., slipped and fell on the premises while waiting for a fellow employee to return, we have grave doubts if he would be denied recovery. See: Carter v. Lanzetta, above, Crane v. Patterson & Yeary Steel Company, 357 So.2d 49 (La.App. 4th Cir. 1978), writ refused 359 So.2d 196 (La.1978); Serean v. Kaiser Aluminum & Chemical Corporation, 277 So.2d 732 (La.App. 4th Cir. 1973); Singleton v. Younger Brothers, Inc., 247 So.2d 273 (La.App. 4th Cir. 1971), writ refused 259 La. 59, 249 So.2d 202 (1971); Huett v. Insurance Company of North America, 329 So.2d 222 (La.App. 4th Cir. 1976), writ denied 332 So.2d 863 (La.1976). Plaintiff's workmen's compensation claim must stand or fall on the applicability of R.S. 23:1081 and the facts surrounding the altercation.
R.S. 23:1081, in pertinent part, provides:
"§ 1081. Deliberate or wilful injuries, etc.; defenses; burden of proof
No compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another. ...
In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer."
The leading case on the subject is Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961). In this case the court rejected the aggressor rule, generally a defense in a tort action, and stated: pp. 53-54
"The appellate courts of this State in many instances have heretofore based their decisions interpreting this provision of the Compensation Act on the aggressor doctrine, generally denying recovery to the injured employee who provoked the assault which resulted in his injury.3 Although the results reached in these cases would not necessarily be erroneous, it would appear that the statutory provision involved does not require a resort to doctrines not there enunciated. The inquiry, under the mandate of the statute, it appears to us, should be limited to whether the employee's injury resulted from the employee's wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or a fist-blow, does not render the conduct of the employee sufficiently serious or grave, and there is no wilful intention to injure one's self or another under such circumstances.4 The mere fact that the employee seeking recovery may have been to blame for the fray is not adequate to meet the testthere must be more. Johnson v. *1277 Safreed, 224 Ark. 397, 273 S.W.2d 545. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act." (Footnotes omitted)
See, also, 99 C.J.S. Workmen's Compensation ¶ 264; 58 Am.Jur. Workmen's Compensation, sec. 200; Law of Workmen's Compensation by Arthur Larson, vol. 1, sec. 11.15(d); Louisiana Workmen's Compensation Law and Practice by Wex Malone, sec. 345, p. 457.
The cases following Velotta, above, have further emphasized that the burden of proof rests with the defendant and it is a stern one. In Velotta, the plaintiff's action in throwing a pair of trousers into a fellow-employee's face was considered impulsive and lacking in intent to injure. In Crane v. Patterson & Yeary Steel Company, above, an ensuing fist fight between plaintiff and his supervisor over a paycheck was deemed to have resulted from plaintiff's impulsive act and did not constitute "premeditation and malice." However, in Buchert v. Metropolitan Insurance Company, 219 So.2d 584 (La.App. 4th Cir. 1969), plaintiff was denied recovery because his "wilful intention was to engage in a fight which he knew, or should have known, would injure himself or another." In Relish v. Hobbs, 188 So.2d 479 (La.App. 3rd Cir. 1966), writ refused 249 La. 737, 190 So.2d 242 (1966), the plaintiff, who threw a hammer at a co-employee, then knocked him down and started choking him, although considered impulsive, was denied recovery because such acts disclosed wilful intent to injure. Citing Garner v. Avondale Marine Ways, Inc., 134 So.2d 703 (La.App. 4th Cir. 1961) and Relish v. Hobbs, above, as factually similar, the court in St. Pierre v. Baifield Industries, Inc., 225 So.2d 96 (La. App. 2d Cir. 1969), denied recovery to a plaintiff who had followed his superior from one office to another, cursing and threatening him along the way, and who was in the act of striking him when the supervisor turned around and retaliated in self-defense. Finally, in Armstrong v. Jefferson Disposal Company, 258 So.2d 213 (La.App. 4th Cir. 1972), writ refused 261 La. 532, 260 So.2d 318 (1972), the plaintiff, who suffered a gunshot wound, was denied recovery where it was determined that he had threatened and slashed at his opponent with a knife.
In applying the statute (R.S. 23:1081) and the above cited jurisprudence, we find that the plaintiff is not entitled to workmen's compensation benefits. In so holding, we apply the same facts as we noted above in the tort action, namely, that both Augustine and Spears were equally intent on inflicting serious bodily injury to the other. Both had armed themselves (limb and hammer) with dangerous instrumentalities under circumstances that cannot be considered impulsive.
For the above reasons, the judgments of the district court (Nos. 12,976 and 12,977) are affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Suit No. 12,976.
[2] Suit No. 12,977.
[3] The jury also rejected Spears' reconventional demand against Augustine where the latter was charged with provoking the altercation. Spears did not appeal this decision nor answer Augustine's appeal.
[4] See note 2 above.
[5] Rule 7, Section 5(b), Uniform RulesCourts of Appeal

"Consider abandoned and dismiss the appeal in any case in which the appellant has neither appeared nor filed brief prior to the time the case is called for oral argument, or the time the case is submitted without oral argument on the docket of the court. By `appearance' is meant personal appearance in open court, or the filing of a written instrument negating any intent to abandon the appeal, or the filing of a written pleading; and * *"