FORET, Judge.
Joey Miller, plaintiff and appellant herein, was injured on February 10, 1987, while driving to work. Plaintiff collided with an 18 wheeler which failed to clear his lane of traffic while negotiating a left turn from a side road. After trial, the jury rendered its verdict, finding that the defendant, Derwin Royal, the driver of the 18 wheeler, was not negligent and thus, awarded no damages to Miller. Miller appeals this jury verdict. We find that the jury clearly erred in its verdict and thus, we reverse.
LIABILITY
On February 10, 1987, Miller left his home at approximately 6:00 A.M. to go to work as he had done for ten years. It was still dark, but he knew the road well, was not in a hurry, and was well rested. As Miller rounded a long curve located approximately 1000 feet from a side road named Little Egypt Road, he noticed a set of lights coming toward him in the opposite lane of traffic. Miller had no reason to suspect anything was amiss and did not reduce his speed as he approached the headlights. As he passed the headlights of the defendant’s 18 wheeler[1], he realized that a portion of the trailer was still in his lane and applied his brakes. He was unable to stop his vehicle before colliding with that portion of the 18 wheeler in his lane of traffic.
*825 ROYAL’S NEGLIGENCE
After trial, the jury concluded that Royal was not negligent. We find that this result is clear error on the part of the jury. Much ado is made as to whether or not Royal could see Miller approaching the curve before he attempted to turn left onto Highway 120. We find that, as to the issue of Royal’s negligence, it is immaterial whether the defendant saw Miller before beginning his entrance into the favored road. Even under defendant’s version of the facts, i.e., that he did not see Miller’s pickup until the 18 wheeler was already well into its turn onto Highway 120, the fact remains that Royal did not have sufficient time to complete his turn safely and clear Miller’s lane of traffic prior to the collision. Thus, he was negligent in beginning a turn, in the dark, which could not be completed safely before the approach of an oncoming vehicle.
Miller was blinded by the headlights' of the oncoming 18 wheeler and could not see the trailer. Perhaps this turn could have been safely negotiated in the daylight, but the evidence is clear that it could not safely be negotiated in the dark. This finding is buttressed by the testimony of Bill Single-tary, who was approaching the 18 wheeler approximately one minute behind Miller’s vehicle on the day of the accident. Single-tary testified that as he rounded the curve, he noticed the tractor of the 18 wheeler and its headlights.[2] He did not see the trailer in his lane and only avoided a second collision because Royal was out in front of the truck flagging him to stop.
Defendant’s expert testified that it took approximately 18 seconds for Royal to pull from the stop sign to the point of impact while plaintiffs expert testified that it took Royal approximately 10.8 seconds for the same maneuver. Defendant contends that Miller’s speed, approximately 52 to 55 miles per hour, in a 45 miles per hour zone, was a contributory factor in causing the accident. Under the plaintiff’s version, if the turn took 10.8 seconds, at 55 miles per hour, Miller would have been within Royal’s sight distance, placing the vehicles approximately 871 feet apart when Royal pulled out from the stop sign. At a slower rate of speed, the vehicles would have been even closer together. If these facts are correct, defendant clearly was 100% at fault in pulling out with the plaintiff in his field of vision, regardless of Miller’s speed.
According to the defendant’s version, i.e., that the turn took 18 seconds, there was approximately 1,452 feet between the vehicles when Royal pulled out, assuming Miller was traveling 55 miles per hour. Similarly, if Miller was traveling as slow as 40 miles per hour, he would have been closer to the defendant but still outside of defendant’s sight distance at the time Royal pulled out from the stop sign. Royal’s headlights would have prevented Miller from seeing the trailer of Royal’s truck even if Miller had been driving below the speed limit. It is undisputed that Miller did not slow down or apply his brakes until he passed the tractor and saw the trailer. Defendant’s expert testified that, under this scenario, the accident would still have taken place. Even under the defendant’s version of the facts, Royal could not have cleared Miller’s lane of traffic in sufficient time to avoid a collision.
Therefore, under either version, Miller’s speed was not a contributing factor in causing the accident. See Billiot v. Bourg, 338 So.2d 1148 (La.1976); Aguillard v. Frank, 542 So.2d 834 (La.App. 3 Cir.1989).
La.R.S. 32:124 sets forth the law regarding right of way for a vehicle entering the favored highway. After stopping at the stop sign, the driver must yield to all vehicles which are approaching so closely on the favored highway as to constitute an immediate hazard.
It is clear from the evidence presented that Royal could not finish his turn in time to prevent an accident as to vehicles out of sight at the time he began negotiating his turn. See Robles v. Horton, 247 So.2d 628 (La.App. 2 Cir.1971); cf. Killian v. C & H Transp. Co., Inc., 283 So.2d 799 (La.App. 2 Cir.1973) (distinguishable on its facts).
*826 It is well settled that when a collision occurs between two vehicles, and one is in the wrong lane of traffic, a presumption arises that the driver in the wrong lane was negligent. See Young v. Armstrong, 546 So.2d 355 (La.App. 3 Cir.1989); Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3 Cir.1984), writ denied, 465 So.2d 737 (La.1985). We find that Royal’s negligence in attempting to negotiate such a dangerous turn, in the dark, without an awareness as to whether his 18 wheeler could clear the opposite lane of traffic before oncoming vehicles, in or out of sight, would overtake him, was the sole cause of the accident.
WAS MILLER NEGLIGENT?
In finding that Royal was negligent in not ascertaining that he could safely complete his turn prior to proceeding into the intersection, we also find that Miller was not negligent. Miller justifiably relied upon his right of way and is not held to a degree of care which requires him to see that which cannot be seen despite a sharp lookout ahead. “[A] motorist traveling at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway.” Bunkie Funeral Home, Inc. v. McNutt, 414 So.2d 1263, 1269 (La.App. 3 Cir.1982). As such, we reverse the jury’s finding of no negligence on behalf of Der-win Royal and find Royal’s actions the sole cause of the accident.
DAMAGES[3]
At the time of the accident, Miller was taken to Sabine Medical Center, where he was found to be alert and oriented and suffering with lacerations and contusions, although x-rays revealed no fractures or dislocations. At the request of his wife, Miller was discharged within two hours, in satisfactory condition, and transferred to Schumpert Medical Center.
Miller was hospitalized at Schumpert from February 10-14, 1987 for observation. At Schumpert, Miller was treated by Dr. Fred Price, a general surgeon, who diagnosed Miller as having a cerebral concussion, contusions, abrasions, and some lum-bosacral strain. A CT scan taken at Schumpert showed no trauma to the head. Upon his release, Dr. Price anticipated Miller’s full recovery.
Miller continued seeing Dr. Price between February 18 and April 21, 1987. Upon his continued complaints of pain, Dr. Price ordered several x-rays with negative findings. Dr. Price noted that Miller believed his injuries were worse than the medical evidence substantiated and recommended that Miller increase his activity level so that he might be able to return to work.
Miller was seen by Dr. Richard Stevenson, a cardiovascular surgeon, on March 25, 1987. He noted that Miller appeared depressed and diagnosed rib inflammation without significant abnormality. After a second visit on April 21, 1987, Dr. Stevenson found that Miller had recovered to the extent that further visits were unnecessary. Dr. Stevenson’s report notes some evidence of exaggeration or malingering.
Miller was also seen on March 25, 1987, by Dr. Mike Hayne, an orthopedic surgeon. After examination, Dr. Hayne noted no spasm or other objective physical finding. Miller did not keep a second appointment with Dr. Hayne. After seeking treatment from the above three physicians, these physicians either quit seeing Miller because his problems were not physical or Miller discontinued seeing the physicians, presumably dissatisfied with their treatment.
Miller then began seeing a number of doctors, including one Dr. Fred Willis, who *827 saw him some thirty times between March, 1987 and August of 1988. Dr. Willis is a specialist in family medicine. Miller was also hospitalized several times. The heavy preponderance of medical testimony is that plaintiff could return to work if he so desired. However, plaintiff never did attempt to resume employment, apparently being content to receive disability benefits under a policy apparently through his employer’s group policy, or some similar policy available through his place of employment. There was talk of post-traumatic stress syndrome and/or post-traumatic syndrome. Miller attended a pain management clinic, with the result that a physician there noted that Miller was exaggerating from both physical and psychological symptoms. The range of medical testimony on Miller’s alleged mental problems amounts to evidence of malingering and/or unconscious or conscious exaggeration of physical symptoms.
The evidence is undisputed that, from a physical standpoint, there is no reason Miller cannot return to work. Since May of 1987, none of the thirteen physicians who have examined and/or tested Miller have found any objective evidence of physical injury. Therefore, we find that Miller’s actual physical injuries as a result of the February 10, 1987 accident were slight.
The experts agree that, as a result of the accident, Miller suffered from post-traumatic stress syndrome and that Miller suffered from the emotional residuals accompanying this diagnosis far longer than from his minor physical injuries. The evidence is clearly in dispute as to Miller’s psychological status, specifically as to whether his tendency to exaggerate both his physical and psychological disabilities is a result of conscious malingering or a result of unconscious emotional problems.
Although Dr. Willis and Dr. Phillips questioned Miller’s ability to return to work, this evidence is disputed, or at least diluted, by at least eleven other physicians who, either found no evidence that Miller could not return to work, or affirmatively encouraged him to return to work. There is no evidence in the record that Miller has ever attempted to return to work and failed. Therefore, we are persuaded by the overwhelming evidence of Miller’s own physicians and/or those he was referred to by his physicians, who indicate that Miller is either malingering or, at a minimum, exaggerating both his physical and psychological symptoms. As stated by our breth-ern in the First Circuit in Vezinat v. Marix, 217 So.2d 416, 420 (La.App. 1 Cir.1968):
“... inasmuch as a claim for damages based on alleged neurosis is nebulous, it must therefore be scrutinized with extreme care to protect tort feasors against' unjustified and unwarranted claims while at the same time insuring that bona fide claims of such nature will not be denied. We hold, therefore, that in tort actions proof of the existence of conversion neurosis and its causal relation to the injury producing incident sued upon must be presented in clear and convincing fashion. We so hold because in instances of this character the diagnosis of neurosis must perforce be made primarily upon subjective symptoms.”
See also Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La. App. 3 Cir.1982), writ denied, 413 So.2d 909 (La.1982).
We do not find that the “mild residual” of the post-traumatic stress syndrome from which Miller was still suffering as of August of 1988 constitutes such a limitation that Miller is prevented from returning to work. Miller testified at trial that he wants to return to work and that his job is being held open for him. We note that he is presently receiving disability from his employer to the extent of approximately 2/3 of his wages and are mindful of the possibility, considering his medical history, that the receipt of these funds may be an impediment to his recovery. Therefore, we determine that Miller is entitled to $35,-948.37 for medical expenses, together with lost wages and health insurance premiums from the date of the accident until the time of trial in the amount of $37,735.00, total-ling $73,683.37 in special damages. Additionally, we find that Miller is entitled to $50,000 for his past, present, and future *828 pain and suffering, both physical and mental.
CONCLUSION
Based upon the foregoing, the judgment of the trial court is reversed as to the issue of liability, finding that the defendant, Der-win Royal, is 100% at fault in causing the accident at issue herein. Judgment is rendered in favor of Joey Miller and against defendants, Derwin Royal, ConAgra Poultry Company, a/k/a Country Pride Poods, Ltd., and Hartford Insurance Company, in .the amount of $73,683.37 in special damages, and $50,000 in general damages. Costs of this appeal and at the trial level are assessed to defendants, Derwin Royal, ConAgra Poultry Company, a/k/a Country Pride Foods, Ltd., and Hartford Insurance Company.
REVERSED and RENDERED.

. Defendant, Derwin Royal, was an employee of and in the course and scope of his employment with ConAgra Poultry Company, a/k/a Country Pride Foods, Ltd., at the time of the accident. Both ConAgra, a/k/a Country Pride Foods, Ltd. and its insurer, Hartford Insurance Company, are named as additional defendants herein (hereinafter referred to as "defendant”).

. Derwin Royal’s tractor and trailer totaled sixty-five feet in length.

. The jury originally returned an incorrect verdict wherein they found defendant 21.25% negligent and Miller 78.75% negligent. This verdict was invalid inasmuch as there were less than nine jurors concurring. In this invalid verdict, the jury had awarded Miller damages in the amount of $13,333.33 for past, present, and future medical expenses, and $125,000 for past, present, and future loss of wages, including earning capacity. The jury, in the attempted verdict, awarded no damages to Miller for past, present, and future pain and suffering, both mental and physical. Thus, the jury was sent back in deliberation and subsequently returned a verdict in favor of defendant, denying all recovery to Miller.