742 So.2d 929 (1999)
Larry STACY, Plaintiff-Appellee,
v.
MINIT OIL CHANGE, Defendant-Appellant.
No. 31,985-WCA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
Crawford & Anzelmo by Donald J. Anzelmo, Monroe, Counsel for Appellant.
David R. Cook, Shreveport, Lunn, Irion, Johnson, Salley & Carlisle by J. Martin Lattier, Brian D. Smith, Shreveport, Counsel for Appellee.
Before NORRIS, STEWART and DREW, JJ.
DREW, J.
Larry Stacy suffered a fractured skull while working at Minit Oil Change when another employee struck him on the forehead with a metal pipe. Minit Oil Change appeals a judgment awarding Stacy workers' compensation benefits, arguing that Stacy was the initial physical aggressor in the dispute, he was injured as the result of *930 his willful intent to injure another and the dispute was personal in nature and unrelated to Minit Oil Change's interests.
We affirm.

FACTS
Minit Oil Change ("Minit") operates several car wash and oil change service locations in Shreveport, including one on Southfield Road.[1] The car wash and the oil change business at the Southfield location are situated next to each other. Claimant Larry Stacy ("Stacy") was employed in the car wash section at the Southfield site.
On the morning of October 10, 1996, Stacy was working in the front area of the car wash, drying the cars as they exited an automated car wash. Another employee, James Stevenson ("Stevenson"), offered Stacy some of the homemade cookies he had brought to work. Stevenson's generosity apparently diminished when he accused Stacy of eating too many of the cookies. The two began arguing, an argument described as "loud" by Sheila Mc-Donald, the assistant manager in the car wash section.
The employees eventually returned to their work, with Stevenson going to the rear of the car wash. Stacy soon began drying a Jeep which had just came out of the automatic car wash. The Jeep's owner, noticing that bugs remained on his vehicle, asked Stacy to remove the bugs. Stacy returned the Jeep to the rear of the car wash, where Stevenson was washing cars. As Stacy exited the Jeep, Stevenson grabbed Stacy and pushed him up against the vehicle, asking him what he was doing and if he thought Stacy was the "boss." The pair began wrestling until Stacy slipped. When Stacy returned to his feet, Stevenson tried to hit him with a paint bucket, but stopped when the bucket's handle broke. Stevenson then left Stacy's presence. Stacy testified that he next saw Stevenson, now holding a long pipe, standing near Jay Fawcett, Minit's manager. Thinking to himself, "ain't no sense in me going over there without nothing in my hand because I didn't know what he was going to do," Stacy grabbed a piece of pipe and approached Stevenson. When Stacy reached Fawcett and Stevenson, Fawcett asked the two to give him their pipes. The last thing Stacy remembered before getting hit was he and Stevenson giving their pipes to Fawcett when Stevenson made a motion at him. Although Stacy was giving Fawcett his pipe and Fawcett had his hands on it, Stacy was still holding his own pipe. Stacy was also trying to hold Stevenson's pipe because he did not want Stevenson to hit him with it. Stacy related that as he complied with Fawcett's request, Stevenson hit him on the head. Stacy was transported to LSU Medical Center, where surgery repaired his fractured skull. A metal plate was placed in his head.
On October 23, 1996, Stacy filed a disputed claim for compensation form against Minit. In its answer, Minit denied that Stacy was performing services arising out of and in the course and scope of his employment at the time he was injured. Minit further maintained that Stacy's injury arose out of a personal dispute with another employee over matters unrelated to his employment, Stacy was the initial physical aggressor in an unprovoked physical altercation and Stacy was injured as the result of his own willful intent to injure another.
Trial in this matter was held on November 21, 1997. The WCJ heard testimony from Daniel Shane Boyette, the assistant manager in the oil change section at this Minit location. Boyette remembered Fawcett coming over to the oil change area and saying he needed a large person to help him. Boyette at first thought Fawcett was joking, but then he eventually *931 followed Fawcett to where Stacy and Stevenson were. Boyette observed the pair wrestling with a pipe. Boyette thought that Stacy was the only one who had the pipe when he first observed them, then that Stacy and Stevenson both had hands on the pipe, fighting for the pipe until Stevenson gained control. He next saw Stevenson strike Stacy on the head with a pipe he described as measuring between 30 and 36 inches in length. Stacy did not have anything in his hands when he was struck. The only blow Boyette witnessed was when Stevenson struck Stacy on the forehead. Boyette testified that he saw only one pipe and that he did not notice any other pipes lying around.
The WCJ rendered judgment in favor of Stacy, awarding benefits of $91 per week for 30 weeks and medical expenses for Stacy's physical injuries subject to the workers' compensation fee schedule.

DISCUSSION
The factual findings of the WCJ are entitled to great discretion and will be reversed only on a showing of manifest error. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Smalley v. Integrity, Inc., 31,247 (La. App.2d Cir.12/9/98), 722 So.2d 332. The manifest error standard of appellate review applies equally when some of the evidence includes written reports, records and depositions. Allen v. Misco Paper, 27,146 (La.App.2d Cir.8/23/95), 660 So.2d 175.
The WCJ heard testimony from Stacy, Boyette, McDonald and Bill Lowdermilk, Minit's owner. Fawcett's deposition was filed into the record because he did not appear at the hearing after being subpoenaed. James Stevenson, who struck the claimant, also failed to appear at the hearing despite being subpoenaed. Both parties stipulated that no adverse presumption would be drawn from Stevenson's absence.
The WCJ apparently believed Stacy's version of events, commenting that she appreciated his honesty about his past problems. She found his testimony to be overall at least consistent with Boyette's testimony. We note that Stacy was the only witness testifying who observed what occurred up until the point both Stacy and Stevenson picked up pipes. The WCJ characterized Boyette as a "great witness," believing his testimony and wishing he had seen more of the fight while recognizing that Boyette came upon the fight at a late stage. The WCJ, in summarizing Boyette's testimony, recalled that Boyette "saw them both with a pipe" and thought that this corroborated Stacy's testimony. The WCJ was incorrect because Boyette testified that he saw only one pipe. When Stacy was asked whether he agreed with Boyette's statement that there only one pipe involved in the fight, Stacy insisted that two pipes were used. Nonetheless, the WCJ still believed Stacy's testimony was overall consistent with Boyette's testimony and inconsistent with Fawcett's testimony.
The WCJ did not find the testimony by Boyette and Fawcett to be entirely consistent. Aubrey Jay Fawcett testified that he was the manager of Minit's Southfield location. Fawcett remembered seeing Stevenson searching for a pipe, and when Fawcett asked Stevenson why he was doing this, Stevenson responded that he needed a pipe because Stacy was getting a pipe. Fawcett at first was able to convince Stevenson to drop his pipe, but when Stacy appeared holding a pipe, Stevenson again picked up his pipe. As Stacy and Stevenson argued, Fawcett left to get help from Boyette. Fawcett soon returned, but Boyette did not immediately follow him. Fawcett testified that he observed Stacy hitting Stevenson on the leg several times with his pipe as Stevenson tried to block him off. Fawcett placed himself between Stacy and Stevenson in an effort to end the confrontation. Fawcett testified that when he told Stevenson to drop his pipe, Stevenson complied, and he knocked the pipe away. Fawcett recalled that Stacy *932 resisted giving up his pipe as he tried to get the pipe away from Stacy. Fawcett stated that when Stacy swung the pipe, he was able to grab Stacy's pipe. Fawcett thought he pulled the pipe away from Stacy first before Stevenson took it from him and hit Stacy on the forehead.
Stacy explicitly disagreed with Fawcett's statement that Stevenson had relinquished the pipe he was holding. The WCJ apparently accorded little credibility to Fawcett's testimony, stating:
I read the Fawcett deposition to confirm that there was at least the Jeep incident following the cookie incident, and I think more importantly what Fawcett really does is confirm that this is an unfortunate circumstance that is the natural result of a progression of events. We have cookies and we have the Jeep and we have a lot of yelling and then the natural consequences of that is they get closer together, they wrestle, they hit. And that is really the part that is consistent with Mr. Stacy and Mr. Fawcett.

Initial Physical Aggressor
Minit first argues that the WCJ erred in failing to find that Stacy was the initial physical aggressor. The WCJ determined that Minit did not meet its burden of establishing this defense because "no one proved who really started this[.]" The WCJ further concluded that even if Stacy was the initial aggressor, Stevenson's striking him on the head with the pipe was excessive.
La. R.S. 23:1081 provides, in part:
(1) No compensation shall be allowed for an injury caused:
* * *
(d) to the initial physical aggressor in an unprovoked physical altercation, unless excessive force was used in retaliation against the initial aggressor.

* * *
The "initial physical aggressor" defense was added to La. R.S. 23:1081 by Act No. 1, § 1 of 1983, 1st Ex.Sess. The burden of proof is on the employer to prove this defense. La. R.S. 23:1081(2).
Minit directs our attention to this court's opinion in Burkhardt v. City of Monroe, 37 So.2d 601 (La.App. 2d Cir.1948), where Burkhardt's widow was denied benefits after Burkhardt was shot and killed by Harris, a co-worker. The day before the shooting, Burkhardt had threatened that he was going to beat Harris up the next night. That next night, Burkhardt followed Harris as he walked to his car. When Burkhardt lunged towards Harris while holding a wrench or other large tool, Harris shot him. Burkhardt was found to be the aggressor.
Minit also cites Jenkins v. Cities Service Refining Corp., 44 So.2d 719 (La.App. 1st Cir.1950) for support. Jenkins was found to be the aggressor after he was killed by Coltrin, a fellow employee, in self-defense. Jenkins threatened and cursed Coltrin when the placement of Coltrin's ladder impeded the movement of Jenkins' hose. About 45 minutes later, Jenkins left his assigned work structure and approached Coltrin while holding a pipe in a threatening manner. Coltrin picked up a pipe-bending tool and was momentarily able to keep Jenkins at bay. When Jenkins came at him from another direction, Coltrin struck Jenkins on the head with the tool.
We distinguish Burkhardt and Jenkins from the facts in this record. The only evidence regarding what took place before Stacy first armed himself with a pipe is testimony by Stacy and Sheila McDonald, the assistant manager of the car wash. McDonald's testimony is not particularly beneficial since she did not watch the fight, but only heard portions of the argument. Stacy testified that he was exiting the Jeep when Stevenson grabbed him and threw him against the Jeep while accusing him of trying to be the "boss." The pair began wrestling until Stacy slipped. Stevenson *933 then grabbed a paint bucket and swung the bucket at Stacy. As established by Stacy's testimony, Stevenson obviously chose to escalate a verbal disagreement into a physical conflict. Under these circumstances, we cannot say that the WCJ was clearly wrong in rejecting Stevenson's argument that Stacy was the initial physical aggressor. As a result, it is unnecessary for this court to review the WCJ's finding that even if Stacy was the initial physical aggressor, Stevenson's response was excessive.

Willful Intent to Injure
Minit next argues that the WCJ erred in failing to find that Stacy was injured as a result of his own willful intention to injure Stevenson. La. R.S. 23:1081(1)(a) provides that compensation shall not be allowed when the injury is caused "by the injured employee's willful intention to injure himself or to injure another[.]" In finding that Stacy did not have a willful intent to injure, the WCJ concluded that:
This just got out of hand. It got started, both of them are in each other's faces and both of them should have had the good common sense to quit and they didn't. Yes, blows are going to be hit both ways, but I don't think that that's the type of willful conduct. It's not a gunshot and it wasn't I guess with a lot of premeditation. It just wasn't. It happened. So I think it's much more no forethought, they started wrestling and it got out of hand.
Minit submits Martinez v. Dixie Brewing Company, Inc., 463 So.2d 628 (La.App. 4th Cir.1984), writ denied, 467 So.2d 537 (La.1985) in support of its argument. In Martinez, Jose Castro died after being struck by a co-employee, Jackson. Castro initiated the conflict by slapping Jackson on the back of his head, an act described by one witness as "horsing around." Jackson then punched Castro in the nose, knocking him to the ground and breaking his watch. Jackson left the area on a forklift but soon returned. Castro then picked up a metal bar and swung it at Jackson. As Jackson ran to another area of the warehouse, Castro threw the bar at him and chased him. When Jackson returned armed with a pipe, Castro picked up a baseball bat. The two swung their weapons at each other until Jackson struck Castro on the leg and head, killing Castro.
By the time Stacy picked up a pipe, Stevenson had already grabbed and pushed Stacy, wrestled with him and attempted to hit him with a paint bucket. When Fawcett was asked about the relative sizes of Stacy and Stevenson, he described Stevenson as a "big boy," estimating Stevenson's weight to be around 235 or 245 pounds. Fawcett characterized Stacy as a "little, bitty fellow," guessing that Stacy weighed about "140 [pounds] if he's wet." Based upon Fawcett's descriptions, Stevenson had a notable physical advantage over Stacy.
Stacy testified that he armed himself with a pipe when he went to speak with Fawcett because he "didn't know what [Stevenson] was going to do." Stacy was aware that Stevenson, who was much larger and had already verbally and physically attacked him, was also now holding a pipe. Stacy apparently did not want to be attacked again.
We distinguish Martinez and Augustine v. Washington Parish Police Jury, 383 So.2d 1271 (La.App. 1st Cir.1980), writ denied, 386 So.2d 1379 (La.1980), another case cited by Minit in its brief. In Martinez, Castro initiated the horseplay, swung a metal bar at Jackson, then chased and threw the metal bar at Jackson. The Martinez court noted that there was a lull in activity between the time Castro was punched and when Jackson returned on his forklift, allowing a "cooling off" period and showing that Castro's later actions were not impulsive. The claimant in Augustine, supra was injured when he was hit on the head with a hammer by a co-worker after they feuded about a broken piece of equipment. The court in Augustine *934 concluded that Augustine's actions could not be considered impulsive because he had provoked the fray and grabbed a pine limb when a fight seemed imminent.
Stacy related that Stevenson had initiated the physical contact. Stacy's actions were impulsive and not premeditated as he was simply reacting to Stevenson's latest move by attempting to defend himself. Accordingly, we cannot say that the trial court committed manifest error in finding that Stacy did not have the willful intent to injure anyone.

Employment-Related
Minit further argues that the WCJ erred in finding that the incident was related to Minit's interests and arose out of Stacy's employment. The WCJ found that the injury was employment-related, commenting:
Admittedly, cookies aren't employment related, but the Jeep is employment related and I have to say that Fawcett and Mr. Stacy both agreed that that Jeep got brought around to the back and I think for whatever it's worth it probably agitated the person working in the back, and that makes it employment related enough.
La. R.S. 23:1031 provides, in part:
* * *
E. An injury by accident should not be considered as having arisen out of the employment and thereby not covered by the provisions of this Chapter if the employer can establish that the injury arose out of a dispute with another person or employee over matters unrelated to the injured employee's employment.
Stacy testified that the cookies were not mentioned when Stevenson grabbed him as he exited the Jeep. Stevenson was simply accusing Stacy of trying to be the boss. Stacy had not brought the Jeep to the back of the car wash in order to initiate a personal conflict with Stevenson, but instead to more thoroughly clean the car pursuant to a customer's request. This record supports the WCJ's finding that Stacy's injury did not arise out of a dispute with another employee over matters unrelated to Stacy's employment.

DECREE
At appellant's cost, the judgment is AFFIRMED.
NOTES
[1] Minit Oil Change is incorrectly cited as "Minute Oil Change" in the case caption and on the disputed claim for compensation form.