Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,953-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

WILBERT PAYTON                                    Plaintiff-Appellant

versus

TERRY TORRENCE AND                                Defendants-Appellees
ALLSTATE PROPERTY AND
CASUALTY

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 602550

Honorable Michael A. Pitman, Judge

* * * * *

DAVIS LAW FIRM, LLC
By: S. P. Davis, Sr.                              Counsel for Appellant


ZELDA WYNEE TUCKER                                Counsel for Appellees



* * * * *

Before STONE, STEPHENS, ROBINSON, HUNTER,
and MARCOTTE, JJ.


HUNTER, J., dissents with written reasons.

STONE, J., dissents for reasons assigned by J. Hunter.

**ROBINSON, J.**

In this lawsuit arising from an accident between two vehicles at an intersection controlled by traffic signal lights, the plaintiffs appeal a judgment finding in favor of the defendants following a trial on the merits. We affirm the judgment.

## FACTS

Early in the evening on January 22, 2017, Wilbert Payton ("Payton") was driving his Ford F-150 truck southbound on Pines Road in Shreveport, Louisiana. His cousin Corey Burton, Sr., was in the front passenger seat. Corey Burton, Jr., and Javonte Sikes, who is the nephew of the elder Burton, were also in the truck.

At around 6:00 p.m., Payton was involved in an accident at the intersection of Pines Road and Westport Avenue with a Monte Carlo car driven by Terry Torrence, who was attempting to make a left turn onto Pines Road from Westport Avenue. Kassie Vaughn, Torrence's fiancée, and her infant daughter were passengers in Torrence's car. Payton maintained that he had a green light when his truck entered the intersection. Torrence contended that he stopped at the intersection on a red light, then entered the intersection when he received a green turn signal.

At the intersection, southbound traffic on Pines Road had two lanes going straight, one lane going left, and one lane going right. Payton was in the left lane going straight. Westport Avenue had two lanes going left and one lane going straight or to the right. Torrence was in the far left turn lane.

On August 2, 2017, Payton filed suit against Torrence and his liability insurer, Allstate Property and Casualty Insurance Company. Unfortunately, Payton died on October 4, 2018, from conditions unrelated to the accident.

His widow, Linda Payton, and his children, Erick Payton, Erika Fletcher, and Andrea Payton, were substituted as party plaintiffs. They are collectively referred to in this opinion as "the Paytons."

***Trial on the merits***

A bench trial was held in this matter on August 11, 2021. Wilbert Payton testified by deposition. He described the conditions that evening as foggy and rainy. Payton maintained that his light was green as he approached the intersection, his light was still green at the time of the accident, and his truck was under the light at the time of the accident. Payton testified that he never had a red light as he approached the intersection. He told the police officer who investigated the accident that Torrence ran the red light and hit him because he thought Torrence had a red light since his own light was green.

The passenger-side fender of his truck was damaged in the collision. Payton testified that he may have seen the Monte Carlo a few seconds before impact, but there was not enough time for him to brake or to blow his horn. He recalled that Corey Burton, Sr., told him to "look out" right before the accident.

Payton was unable to remember if any vehicles were in front of him or next to him as he drove through the green light. At first, he testified that there was a car in the left turn lane on Pines Road which blew its horn, but then he later testified that he did not remember if there was a car in the left turn lane or who even blew the horn which he heard after the wreck.

Torrence described the weather conditions as clear at the time of the accident, but the road was wet from rain earlier that day. It was already dark at the time. Torrence testified that when he approached the intersection, he

stopped there because his light was red. The southbound lanes of Pines Road were closest to where he was stopped in the far left lane at the intersection. When his light turned to a green light and a green arrow at the same time, he pulled forward to begin making his left turn and was hit by the truck. He denied having started to turn his wheel to the left at the time of impact.

Torrence estimated his car's speed was 5-10 mph before impact. Torrence's damage was to the area of the front fender and wheel on the driver's side. Torrence thought the collision occurred in the left lane, not the middle of the intersection. He recalled that a car, which had been to his right when he was stopped at the light, continued straight when he received the green light and the green arrow.

Torrence testified that he did not see Payton's truck before the accident, so he made no attempt to avoid it. He saw no other vehicles going southbound on Pines Road. He was looking straight ahead at the green light and preparing to make his turn when he was hit. Torrence testified that when he received the green light and arrow, he looked ahead to make sure nobody was coming toward him and then he started pulling out. He was not paying attention to his left or right. While stopped at the intersection, he was unable to see the color of the light facing Payton's truck. Torrence testified that his fiancée told him to "watch out" just before the collision.

Torrence claimed that following the accident, a passenger in Payton's truck asked if they were okay and then said that Payton had not been paying attention. Torrence never relayed this information to the police officer who responded to the accident. In his statement to the officer, Torrence wrote that his light was green and that Payton's truck ran through the red light.

3

Corey Burton, Sr., is Payton's cousin. He was in the front passenger seat of Payton's truck at the time of the accident. His son and nephew, who were 10 years old and 8 years old respectively at the time, were in the backseat. Burton denied that it had been raining. Burton testified that no other vehicle was heading southbound on Pines Road at the time of the accident. Burton maintained that the light facing them as they approached the intersection was green and never changed to red before the accident. Burton stated that he saw the Monte Carlo as it was coming toward them and he began "hollering." However, he later testified that he did not see the Monte Carlo until it hit them, and he started screaming at the time of impact. Burton testified that he noticed the light was green as the Monte Carlo hit them. According to Burton, there was nothing Payton could have done to avoid the accident.

Burton denied telling Torrence following the accident that it was Payton's fault because he was not paying attention. In fact, he denied having any conversation with Torrence. He only asked Torrence's fiancée if the baby was okay after they had gotten out of their vehicles. The police officer never talked to him, his son, or his nephew after the accident.

Kassie Vaughn, Torrence's fiancée, was a passenger in his car along with her daughter. She testified that Torrence stopped at a red light at the intersection. No vehicle was in front of them at the light. However, there was a truck to their right. When their light changed, it changed to a green circle light and a green arrow.

Vaughn recalled that the impact occurred as soon as they pulled out to begin turning, and the impact occurred in the left lane on Pines Road. She

did not see Payton's truck before the impact, and she denied saying anything to Torrence prior to the collision.

Vaughn testified that she and Torrence remained in the Monte Carlo following the accident. She denied speaking with anyone from Payton's truck, but she recalled Torrence speaking with one of them. She could not remember what was said as she was not paying attention to the conversation because she was checking on her daughter at the time.

Patrol Officer Matthew Dixon from the Shreveport Police Department responded to the accident. When he arrived at the scene at 6:05 p.m., he found the vehicles were in the southbound lane in the middle of the intersection. He noted that it was dark, the weather was cloudy, and the road surfaces were wet. Dixon recorded the truck's damage as being to the front passenger side. The car's damage was to the front driver side. Dixon took written statements from Payton and Torrence. Payton wrote that he was on Pines Road when the car ran the red light and hit him. Torrence wrote that his light was green and the truck ran the red light. Dixon did not take statements from the passengers. He would have interviewed Burton if Torrence had mentioned that Burton told him that the accident was Payton's fault.

### Judgment

In his written reasons for judgment, the trial judge noted that the presumption of fault attributable to a left-turning motorist was inapplicable in this instance because Torrence entered the intersection from the perpendicular street of Westport Avenue.

The trial judge recounted the testimony from the drivers and the passengers. Payton testified in his deposition that he had the green light at

5

the time of the collision. This was corroborated by the testimony of Corey Burton, Sr. The trial judge found it important that neither the younger Burton nor Javonte Sikes testified on behalf of the Paytons.

In contrast, Torrence insisted that he had a green left-turn arrow when he attempted to turn onto Pines Road. He had come to a complete stop at the intersection and then he proceeded when faced with a green arrow. This was supported by the testimony of Kassie Vaughn.

The trial judge noted that he had visited the location of the accident with the permission of the parties. He discovered that the lights faced by a driver in Torrence's position were a red light, yellow light, and a left-turn arrow. The trial judge found Torrence's testimony that his vehicle came to a complete stop at the intersection to be credible. Accordingly, he determined that Torrence proceeded into the intersection when faced with a green arrow. Thus, the trial judge found that the Paytons had failed to meet their burden of proof on the issue of Torrence's negligence.

A judgment in accord with the reasons for judgment was rendered on October 29, 2021. The Paytons have appealed.

## DISCUSSION

The Paytons argue on appeal that the trial court committed reversible error and was clearly wrong when it ruled in favor of Torrence and found that they had failed to meet their burden of proof as to Torrence's negligence and liability. They argue in particular that as a left-turning motorist, Torrence had the burden of proof to absolve himself of liability.

Our Supreme Court recently summarized the manifest error standard of review:

6

As this court has consistently held, appellate courts are required to review the entire record to ascertain whether manifest error has occurred; thus, the issue before an appellate court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Snider v. Louisiana Medical Mutual Ins. Co.*, 14-1964, p. 5 (La. 5/5/15), 169 So. 3d 319, 323 (per curiam); *Clay v. Our Lady of Lourdes Regional Medical Center*, 11-1797, p. 11 (La. 5/8/12), 93 So. 3d 536, 543. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. *Snider*, 14-1964 at p. 5, 169 So. 3d at 323; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217, p. 11 (La. 4/3/02), 816 So. 2d 270, 279. It is only when documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. *Rosell v. ESCO*, 549 So. 2d 840, 844-45 (La. 1989). Where the factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous; this rule applies equally to the evaluation of expert testimony, including the evaluation and resolution of conflicts in expert testimony. *Snider*, 14-1964 at p. 5, 169 So. 3d at 323; *Bellard v. American Central Ins. Co.*, 07-1335, p. 27 (La. 4/18/08), 980 So. 2d 654, 672.

*Jones v. Market Basket Stores, Inc.*, 22-00841, pp. 13-14 (La. 3/17/23), 2023 WL 2550500, __ So. 3d __.

As noted earlier, Payton testified by deposition. The manifest error standard of appellate review applies equally when some of the evidence includes a deposition. *Stacy v. Minit Oil Change*, 31,985 (La. App. 2 Cir. 6/16/99), 742 So. 2d 929.

La. R.S. 32:104(A) states that "[n]o person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety."

7

La. R.S. 32:122 provides that "[t]he driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching *from the opposite direction* which are within the intersection or so close thereto as to constitute an immediate hazard." Emphasis added.

La. R.S. 32:232(1)(b) states that "[v]ehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic *shall stop and yield* the right-of-way to pedestrians lawfully within an adjacent crosswalk and *to other traffic lawfully using the intersection*." Emphasis added.

Because a left turn is one of the most dangerous maneuvers for a driver to execute, there is a presumption of negligence on a left-turning motorist involved in a motor vehicle accident. *Green v. Nunley*, 42,343 (La. App. 2 Cir. 8/15/07), 963 So. 2d 486. This is in accord with the statutory duty found in La. R.S. 32:122. *Green v. Nunley*, *supra*.

In a vehicular collision case, the oncoming driver may take advantage of a presumption of the left-turning motorist's negligence when the oncoming driver proves that the left-turning motorist executed a left hand turn and crossed the center line at the time of the impact. *Baker v. State Farm Mut. Auto. Ins. Co.*, 49,468 (La. App. 2 Cir. 1/21/15), 162 So. 3d 405.

Although a burden rests on the motorist who desires to make a left turn to explain how the accident occurred and to show that he is free from negligence, this burden may be discharged by the left-turning motorist proving that the left turn arrow was illuminated. *Green v. Nunley*, *supra*.

We conclude that the trial judge was correct in not applying the presumption in this matter. Payton was not an oncoming motorist or an overtaking motorist. He was a motorist approaching an intersection controlled by traffic-control signal lights in a direction that was perpendicular to the direction that Torrence was traveling. Moreover, as the trial judge determined that Torrence entered the intersection on a green arrow, he implicitly found that Payton entered the intersection on a red light. There was no evidence at trial of any traffic light malfunction. Thus, Payton would not have been lawfully in the intersection at the time of the collision.

We agree with the rationale of the Third Circuit when it determined that the presumption did not apply to all motorists attempting a left turn:

> We find this presumption inapplicable to the case *sub judice*. Although Mr. Pearson was ultimately attempting a left turn, the accident occurred as a result of Mrs. Tatum's collision with Mr. Pearson at the intersection of the two streets. Mrs. Tatum did not hit Mr. Pearson because he was turning left, she hit him because he was crossing her lane in the intersection. Therefore, the applicable law is that which pertains to intersectional collisions, and the presumption of liability of left turning motorists does not apply. See *Miller v. Hartford Ins. Co.*, 567 So. 2d 823 (La. App. 3 Cir. 1990).

*Tatum v. Old Republic Ins. Co.*, 94-157, pp. 4-5 (La. App. 3 Cir. 10/5/94), 643 So. 2d 419, 422, *writ denied*, 94-2722 (La. 1/6/95), 648 So. 2d 929.

The matter before us involves the classic credibility determination in an automobile accident case. The trial judge was presented with one version of events preceding the accident as testified to by one driver and his passenger who claimed they had a green light, and a different version from the other driver and his passenger who claimed they had a green turn signal. The trial judge found Torrence's and Vaughn's testimony that the Monte Carlo came to a complete stop at the intersection to be credible. The trial

9

judge then determined that Torrence moved into the intersection on a green arrow. The trial judge ultimately determined that the Paytons failed to carry their burden of proof as to Torrence's liability. We conclude that the trial judge's findings are reasonable, supported by the record, and not manifestly erroneous.

## CONCLUSION

At the Paytons' costs, the judgment dismissing their lawsuit is AFFIRMED.

**HUNTER, J., dissenting.**

Because the trial court failed to allocate fault to Torrence, I respectfully dissent.

In an action for damages where personal injury is sustained, the percentage of fault of all persons causing or contributing to the injury shall be determined. La. C.C. art. 2323(A). In assessing the conduct of the parties for the apportionment of fault, the court considers various factors, including whether the conduct resulted from inadvertence or involved an awareness of the danger, how great a risk was created by the conduct and whether the capacity of the actor was superior or inferior. *Hankton v. State*, 20-00462 (La. 12/1/20), 315 So. 3d 1278; *Watson v. State Farm Fire and Cas. Ins. Co.*, 469 So. 2d 967 (La. 1985). These same factors guide the appellate court's determination of the highest or lowest percentage of fault which could reasonably be assessed. *Hankton*, *supra*.

Herein, the trial court allocated 100% fault to Payton, while failing to assess any fault to Torrence. Based on the factual circumstances and evidence presented in this case, notwithstanding the deference due to the trial court, I believe the record contains a reasonable factual basis to establish fault on the part of Torrence, the left-turning motorist. I would conclude both drivers were equally at fault, and I would allocate the fault of Payton at 50% and the fault of Torrence at 50%.

My review of the evidence does not establish Torrence met his burden of proving, by a preponderance of the evidence, the green arrow was illuminated. Two witnesses, Torrence and Vaughn, testified the green arrow was illuminated, while two witnesses, Payton and Burton, testified Payton's green light was illuminated. Consequently, the trial court's failure to assess

1

any degree of fault to Torrence was manifestly erroneous.  Accordingly, I would reverse the judgment and remand this matter to the trial court for a hearing on the issue of damages.