643 So.2d 419 (1994)
Marie TATUM, Plaintiff-Appellant,
v.
OLD REPUBLIC INSURANCE COMPANY, et al., Defendants-Appellees.
No. 94-157.
Court of Appeal of Louisiana, Third Circuit.
October 5, 1994.
*420 Howard N. Nugent Jr., Alexandria, for Marie Tatum.
Randall Lee Wilmore, Alexandria, Jimmy Roy Faircloth Jr., Pineville, for Old Republic Ins. Co., et al.
Before DOUCET, SAUNDERS and WOODARD, JJ.
WOODARD, Judge.
This lawsuit arises out of an automobile accident which occurred at the intersection of Lee Street and Fern Street in Alexandria, La.

FACTS
On August 14, 1990, plaintiff, Marie Tatum, was travelling north on Lee Street, a four lane thoroughfare, with her guest passenger, William Hall. Defendant, Phillip Pearson, was driving a tractor-trailer west on Fern Street, a two lane thoroughfare that forms a "T" intersection with Lee Street. Lee Street is the favored thoroughfare. Traffic on Fern Street is controlled by a stop sign. Mr. Pearson stopped at the intersection and noticed a pickup truck in the right north bound lane of Lee Street. Because traffic was backed up from an intersection farther north, the truck stopped before Fern Street to avoid blocking the intersection.
Mr. Pearson made eye contact with the driver of the pickup, Matthew White, to make certain he was not going to pull up and block the intersection. Mr. Pearson then checked traffic in both directions. He stopped after crossing the first lane in order to check again for traffic in the other lanes. After determining his path was clear, he proceeded across the left north-bound lane in an attempt to turn left onto a south-bound lane. Meanwhile, Mrs. Tatum, who was travelling in the left north-bound lane, noticed the tractor-trailer enter the intersection and then proceed into her lane of traffic. Mrs. Tatum applied her brakes, but was unable to stop in time to avoid a collision.
*421 Mrs. Tatum filed suit against Mr. Pearson and his employer, Conway Southwest Express, claiming she sustained back and neck injuries in the accident. Old Republic Insurance Company was also made a defendant, however, it was dismissed from the lawsuit. A jury trial was held August 10-12, 1993, and the jury returned a verdict finding Mr. Pearson ten percent (10%) at fault and Mrs. Tatum ninety percent (90%) at fault. The jury further determined that Mrs. Tatum suffered damages totalling $10,000: $5,000 for mental and physical pain and suffering and $5,000 for medical expenses. This amount was reduced by her percentage of fault, and judgment, awarding Mrs. Tatum $1,000, was signed September 22, 1993.
Mrs. Tatum appeals and asserts as error: (1) the trial court's failure to give certain requested jury instructions; (2) the failure to admit into evidence the video depositions of two expert witnesses; (3) the jury's apportionment of fault; and (4) the jury's determination of damages. For the following reasons, we affirm.

JURY INSTRUCTIONS
In her first assignment of error, plaintiff claims the trial court erred in failing to instruct the jury that there is a presumption of negligence on the part of the defendant and that the burden of proof shifts to the defendant to prove that his actions in attempting a left turn did not cause the accident.
Plaintiff submitted a set of proposed jury instructions to the trial court on the second day of the trial. Because proposed jury instructions are required to be submitted thirty days prior to trial, the trial court refused to consider the proposed instructions and sustained defendants' objection to them as untimely.
There is a question regarding whether plaintiff preserved her right to appeal the trial court's ruling on this issue.
La.Code Civ.P. art. 1793(C) provides in pertinent part:
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. (emphasis added).
The first circuit noted in Martin v. Francis, 600 So.2d 1382, 1387 (La.App. 1 Cir.1992), writ denied, 606 So.2d 541 (La.1992):
[La.Code Civ.P. art. 1793(C)] creates a mandatory rule for preserving objection to a trial court's ruling regarding requested jury instructions. In order to preserve the right to appeal a trial court's refusal to give a requested instruction or its giving of an erroneous instruction, a party must not only make a timely objection, but must state the grounds of his objection. Merely making an objection, without stating any reasons therefor, is insufficient. (citations omitted).
In the case sub judice, plaintiff's counsel objected to the jury instructions as follows:
BY MR. NUGENT: ... May we also, then, object and ask thethat the plaintiff's jury instructions which were admittedly late, but not prejudicial be considered by the Court, and the Court has already advised that it is rejecting all of the plaintiff's jury instructions.
BY THE COURT: That's correct....
This objection fails to state the specific charges objected to and fails to give any grounds for the objection. Thus, plaintiff did not properly preserve the right to appeal the trial court's refusal to give requested jury instructions. This assignment of error has no merit. See Martin, supra; Le v. Johnstown Properties, 572 So.2d 1070 (La.App. 5 Cir.1990).

DEPOSITION TESTIMONY
Next, plaintiff asserts the trial court erred in allowing defendants' accident reconstructionist, Eugene Moody, to testify live at trial after Mr. Moody had given a video deposition. Plaintiff argues that, because the parties stipulated the deposition was for trial purposes, defendants were required to show the deposition testimony at trial and were not allowed to call the witness live. In the alternative, plaintiff argues that she should have been able to show the video deposition *422 to the jury in addition to Mr. Moody's live testimony.
At trial, the court refused to show the video deposition either in lieu of or in addition to Mr. Moody's live testimony. The court told plaintiff's counsel, however, that he would be allowed "liberal cross-examination" and the video deposition could be used during that time for impeachment purposes. Plaintiff's counsel never attempted to impeach Mr. Moody's testimony with the video deposition.
Depositions are allowed in lieu of live testimony where the witness is unavailable, where the witness resides over one hundred miles from the place of trial, or where exceptional circumstances exist. La. Code Civ.P. art. 1450(3)(a), (b), and (c). As Mr. Moody was available to testify at the trial, it would have been improper to also show the jurors his video deposition, except for impeachment purposes. We find no error by the trial court on this issue.
Plaintiff also asserts the trial court erred in failing to allow into evidence the video deposition of Dr. Paul Ware, who conducted a medical examination of Mrs. Tatum at defendants' request. Defendants chose not to introduce Dr. Ware's deposition because it was repetitive of the medical evidence already presented to the jury. Plaintiff's counsel then attempted to introduce the deposition into evidence; however, the trial court denied the request as plaintiff had concluded the presentation of her case the previous day. The decision to hold open or reopen a case for production of additional evidence rests within the discretion of the trial judge which decision will not be disturbed on appeal unless manifestly erroneous. See La. Code Civ.P. art. 1632; Harris v. West Carroll Parish School Bd., 605 So.2d 610 (La. App. 2 Cir.), writ denied, 609 So.2d 255 (La.1992). We find no manifest error in the trial court's decision to exclude the deposition. This assignment of error has no merit.

FAULT
Plaintiff's next two assignments of error will be combined for discussion as both concern the jury's apportionment of fault. The jury assessed Mrs. Tatum with ninety percent (90%) of the fault and Mr. Pearson with ten percent (10%). Plaintiff claims the jury was manifestly erroneous in attributing any fault to her, or alternatively, in attributing such a high percentage of fault.
Mrs. Tatum argues that the jury erred in its determination of fault because it failed to apply the presumption of liability of left turning motorists.
We find this presumption inapplicable to the case sub judice. Although Mr. Pearson was ultimately attempting a left turn, the accident occurred as a result of Mrs. Tatum's collision with Mr. Pearson at the intersection of the two streets. Mrs. Tatum did not hit Mr. Pearson because he was turning left, she hit him because he was crossing her lane in the intersection. Therefore, the applicable law is that which pertains to intersectional collisions, and the presumption of liability of left turning motorists does not apply. See Miller v. Hartford Ins. Co., 567 So.2d 823 (La.App. 3 Cir.1990).
Mr. Pearson's travel was controlled by a stop sign at the intersection. La.R.S. 32:123 B sets forth the duties of a driver at a stop sign as follows:
B.... [E]very driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering ... at the point nearest the intersection roadway where the driver has a view of approaching traffic on the intersection roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
Before entering the intersection, Mr. Pearson had a duty to come to a complete stop, to appraise traffic in the intersecting street, and to make certain the way was clear for passage. Vallery v. State, Department of Transportation and Development, 480 So.2d 818 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1350 (La.1986). Mr. Pearson testified that he came to a complete stop at the intersection. He checked the traffic in both directions *423 before proceeding across the intersection. His testimony was corroborated by Mr. White, who saw Mr. Pearson looking both ways to check traffic. Neither Mr. Pearson nor Mr. White saw Mrs. Tatum's car until it skidded and collided with the tractor-trailer.
Mrs. Tatum's duty, as the driver on the favored thoroughfare, was one of ordinary care toward drivers entering from side streets. Coleman v. Rabon, 561 So.2d 897 (La.App. 2 Cir.1990). However, a motorist entering a favored street is entitled to assume that vehicles travelling on the favored street will obey the speed limit. Tillman v. Massey, 445 So.2d 749 (La.App. 4 Cir.1984). The posted speed limit on Lee Street near the accident scene is thirty miles per hour. Mrs. Tatum testified she was travelling approximately twenty-five to thirty miles per hour before applying her brakes. This testimony, however, was contradicted by her own expert witness, as well as defendants'. Plaintiff's accident reconstructionist, Sylvanus Walker, calculated Mrs. Tatum's speed at thirty-eight miles per hour, and defendants' engineering safety expert and accident reconstructionist, Gene Moody, estimated her speed at forty-two miles per hour. Mr. Moody further testified that Mrs. Tatum, while speeding, was also inattentive, and could easily have stopped short of Mr. Pearson's truck had she been attentive or travelling within the speed limit.
After considering the demeanor and credibility of the witnesses and evaluating the evidence presented in this case, the jury concluded that Mr. Pearson was only ten percent (10%) at fault, while Mrs. Tatum was ninety percent (90%) at fault. This finding is subject to the manifest errorclearly wrong standard of review. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.
Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
The jury's apportionment of fault is supported by the record. The evidence reflects that Mr. Pearson stopped at the stop sign, proceeded through the intersection cautiously, and continually checked for traffic. Furthermore, there was evidence that Mrs. Tatum was either speeding, inattentive, or both, which the jury could reasonably conclude was the primary cause of the accident. Louisiana courts have upheld similar conclusions in cases where the motorist on the favored street was inattentive or travelling at an excessive rate of speed. See Moss v. Travelers Indem. Co., 351 So.2d 290 (La.App. 3 Cir.1977); Banks v. LeVasseur, 488 So.2d 1275 (La.App. 4 Cir.1986); Tillman v. Massey, supra; Agency Rent-A-Car, Inc. v. Hamm, 401 So.2d 1259 (La.App. 1 Cir.1981). In light of these considerations, we cannot conclude the jury was manifestly erroneous in the apportionment of fault.

DAMAGES
The jury awarded Mrs. Tatum $5,000 for mental and physical pain and suffering and $5,000 for medical expenses. Mrs. Tatum asserts that an award of $10,000 for injuries to her back and neck, which resulted in $16,415.65 in medical expenses, was an abuse of the jury's discretion.
Mrs. Tatum was taken to the emergency room on the day of the accident, and visited her family doctor, Dr. Bruce Roach, the next day. She reported pain in her neck and shoulder and Dr. Roach diagnosed a cervical sprain/strain. After continuing reports of neck pain, Dr. Roach referred Mrs. Tatum to a physical therapist in order to increase her range of motion and relieve the pain in her neck. At no time during her visits to Dr. Roach did Mrs. Tatum ever mention any lower back pain related to the accident.
On August 30, 1990, Mrs. Tatum began physical therapy. She reported daily neck pain and headaches since the accident. On October 17, 1990, the physical therapist, Robert Mayo, noted Mrs. Tatum was much improved. It was not until November 9, 1990, *424 almost three months after that accident, that Mrs. Tatum made her first report of low back pain to Mr. Mayo. Mrs. Tatum's complaints of low back pain continued and the therapist began treatment of the lumbar region of her back on December 26, 1990. The pain in her back and neck continued, intermittently through January 22, 1992, the date Mrs. Tatum was released from treatment with Dr. Robert Rush, a family practitioner who had been treating her back problems since January of 1991.
In reviewing damage awards, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the trier of fact's "great" and "vast" discretion. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-1261 (La.1993). In determining whether the trier of fact abused its discretion by making an inadequate award, the evidence must be viewed in the light most favorable to the defendant. Charles v. Arceneaux Ford, Inc., 542 So.2d 846 (La.App. 3 Cir.1989). The appellate court may increase the award only if it is below that which a reasonable trier of fact could assess under the particular circumstances of the case. Youn, supra.
Dr. Roach testified that, as a result of the accident, plaintiff suffered a cervical strain which lasted approximately three months. Mrs. Tatum claims her lower back problems were also related to the accident; however, she did not report any back pain until approximately three months after the accident. Dr. Roach, Dr. Rush, and Dr. Ray Beurlot (who examined plaintiff once on June 29, 1992) all testified that muscle trauma from an accident usually manifests itself within several days, and it was not likely that pain developing two to four months after an accident would be related to that accident. Based on this testimony, the jury could reasonably conclude that Mrs. Tatum's back problems and the related medical expenses were not a result of the accident.
Mrs. Tatum also suffered from preexisting psychological depression, which she claims was exacerbated by the accident. The evidence as to this issue was negligible, and the jury may simply have believed that her depression was no worse after the accident than before.
In light of these considerations, we cannot say the jury's award for damages was an abuse of discretion.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.
SAUNDERS, J., dissents. The damages awarded are unreasonably low.