|,AMY, Judge.
In this tort matter involving an intersec-tional collision, the plaintiff appeals the trial court’s finding that he was 75% at fault in causing the accident. He submits this finding is clearly wrong, contending that the defendant, a left turning motorist, was at fault in causing the accident. Conversely, the defendant, in answering the instant appeal, urges that the trial court was manifestly erroneous in finding his fault to be 25%. He submits that he was free from fault or, alternatively, that his fault should be reduced. For the following reasons, we affirm the trial court’s judgment in all respects.
Factual and Procedural Background
The accident giving rise to this dispute occurred on December 5, 1995, at the intersection of U.S. Highway 171 (U.S.171), a multi-lane divided highway running north and south, and Louisiana Highway 3226 (LA 3226), a two-lane road running east and west, in Vernon Parish. The plaintiff, John Thomas, Jr., was traveling south pon U.S. 171, and the defendant, Alvin Veuleman, was attempting to turn left from LA 3226 onto U.S. 171 north. Plaintiffs lane of traffic was controlled by a flashing yellow light, while Defendant’s was controlled by a flashing red light. The accident occurred as Defendant was attempting to execute a left turn onto U.S. 171, when Plaintiff hit a back portion of Defendant’s truck. The case was tried by jury on the sole issue of Lability, as the parties stipulated to all other issues. At the close of evidence, the jury found Defendant 25% at fault and Plaintiff 75% at fault. Plaintiff then filed a motion for judgment notwithstanding the verdict (JNOV), which motion was denied by the *534 trial judge, who found “that the evidence presented was not so insufficient as a matter of law to require men and women to reach a different conclusion.” Plaintiff has timely perfected the instant appeal, and presents the following assignment of error for our review:
When the evidence established that the driver of a pulpwood truck, attempting a left turn from a side road onto a favored multi-lane highway, admitted that he entered the intersection without checking for oncoming traffic [in] both directions, and struck a vehicle driven by an oncoming motorist with the right of way, the jury was clearly wrong in assessing fault of seventy-five (75%) percent to the favored oncoming motorist and twenty-five [ ] (25%) percent to the truck driver.
Defendant has answered the appeal, urging the following:
The jury was clearly wrong in finding the driver of a tractor-trailer 25 percent at fault in causing a motor vehicle accident when the evidence showed his movement across a four-lane highway was executed in such a manner as to give the approaching motorist, and plaintiff-appellant herein, over 10 seconds, and nearly 1000 feet, to react and avoid the accident.
laDiscussion
The starting point in any negligence analysis is La.Civ.Code art. 2315, which provides, in pertinent part, as follows:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
Germane to the instant matter, La.R.S. 32:104(A) provides the duty of turning motorists, which is as follows:
No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101,[1] or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
Further, La.R.S. 32:122 provides the specific duty of a left-turning motorist as follows:
The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard.
Additionally, La.R.S. 32:234(A) provides the applicable duty of motorists proceeding through flashing signals. That statute provides the following:
UWhenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
(1) FLASHING RED (STOP SIGNAL) — When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making, a stop at a stop sign.
*535 (2) FLASHING YELLOW OR AMBER (CAUTION SIGNAL) — When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution.
Importantly, regarding the applicable rules after stopping at a stop sign, La.R.S. 32:123(B) states that the driver must “yield the right of way to all vehicles ... which are approaching so closely on said highway as to constitute an immediate hazard.” Defendant’s duty, prior to traversing the intersection, entailed stopping completely at the flashing red light, examining-oncoming traffic, and determining whether he could safely travel through the intersection. See Tatum v. Old Republic Ins. Co., 94-157 (La.App. 3 Cir. 10/5/94); 643 So.2d 419, wrii denied, 94-2722 (La.1/6/95); 648 So.2d 929. Plaintiff had an obligation to proceed through the flashing yellow light “only with caution.” In that regard, the following explanation has been provided:
A motorist who approaches an intersection controlled by a flashing yellow light is under a duty to exercise a greater degree of care and vigilance than one approaching a green light or an uncontrolled crossing. The degree of caution required of a person approaching a flashing yellow light includes approaching at a reasonable speed and maintaining a proper lookout for danger.... While [a] driver approaching a flashing yellow light may ordinarily rely on the fact that a driver approaching a flashing red light will stop before entering the intersection as required by law, the driver approaching the yellow light is under a duty to exercise caution and vigilance as he enters the intersection so that he may ascertain whether he can cross with safety.
Fontenot v. Shelter Mut. Ins. Co., 499 So.2d 997, 1000 (La.App. 3 Cir.1986) (citations omitted), quoting Great American Ins. Co. v. Tumage, 339 So.2d 1322 (La. App. 1 Cir.1976). Further, the supreme court has provided us with the following direction regarding the respective duties of favored and non-favored drivers:
A motorist on a right.of way street is entitled to assume that motorists on the unfavored street approaching a stop sign will obey the traffic signal and will stop, look and yield the right of way to traffic proceeding on the favored street. Of course, once a right of way motorist in the exercise of ordinary vigil[a]nce sees that another motorist has failed to yield the right of way, a new duty thereafter devolves on the right of way motorist to take reasonable steps to avoid an accident if there is enough time to afford him a reasonable opportunity to do so.
Sanchez Fernandez v. General Motors Corp., 491 So.2d 633, 636 (La.1986) (citations omitted).
At trial, the jury heard both Plaintiffs and Defendant’s versions of the events leading up to the accident. Defendant testified that he stopped at the flashing red light, checked in both directions for traffic, and saw Plaintiffs vehicle on a bridge he judged to be at least 800 feet away. He then proceeded to traverse the intersection, “judg[ing Plaintiffs] distance to be far enough [away]” and feeling that he was able to travel safely through the intersection. However, upon entering the median, Defendant slowed his vehicle to “double check the traffic coming from the south bound lane” and saw three vehicles. He stated that “basically upon that time or just a few seconds or even a second after that is when impact occurred.” Although Plaintiff had previously given a couple of statements to insurance investigators in which he related that he did not know whether Defendant stopped his vehicle at the flashing red light, at trial, he testified that Defendant “never brought his vehicle to a | ^complete stop.” Plaintiff also testified that he was so close to Defendant’s vehicle when Defendant “entered into the south bound lanes of travel from 3226 ... that if [he] had hit [his] brakes at anytime at that point, [he] would have went under the trailer or ... hit his truck.” Plaintiff *536 further testified .that he attempted to “clear[] him” by “dart[ing] back to the right to go to the outside lane.” Unfortunately, Plaintiff stated that he was unsuccessful, as Defendant had stopped in the median and his truck was blocking both lanes of traffic. When questioned as to whether he could have done anything else to avoid the accident, he responded by stating, “The only thing I could have done to avoid the accident was talk to a man at the store a little bit longer to where I wouldn't have been there at that point in time.”
However, John Bentley, Defendant’s accident reconstruction expert, did not agree with Plaintiffs version of events. In evaluating the accident, he stated that he examined the scene of the accident, as well as Defendant’s tractor-trailer. He also reviewed the police accident report and photographs of the scene. He further stated that he performed “acceleration trials”[2] with Defendant, using the tractor-trailer involved in the accident. According to Mr. Bentley’s calculations and observations at the scene of the accident, he testified that Plaintiff would have been 870 feet away from the intersection at the time Defendant’s vehicle began crossing the road. He |7further testified that Plaintiff could have braked to a stop from his 56 mile per hour speed within 150 feet. Moreover, Mr. Bentley opined as follows regarding measures Plaintiff could have taken to avoid the accident:
There were several multiple times the driver [Plaintiff] could have braked to a complete stop but I don’t believe that was even necessary in this case. It’s a situation which the driver could have accommodated — ■ the van driver could have accommodated the truck driver [Defendant] moving through the intersection by just letting off the accelerator.... There was a small amount of contact overlap between the ... extreme left rear of the trailer to the extreme ... left front of the van and had the driver of the van let off the accelerator, that overlap would not have been present and the tractor-trailer would have cleared the intersection.
Additionally, Mr. Bentley stated that, based upon the physical evidence, he did not agree that Defendant’s vehicle was stopped in the middle of the intersection at the time of the accident. He based that statement upon the fact that Plaintiffs van’s tires swerved sharply to the left at impact and that his vehicle “moved somewhat towards the center of the roadway.”
In his written reasons for denying Plaintiffs motion for JNOV, the trial judge stated as follows:
Plaintiff testified that he did not have time to avoid the accident. Defendant’s expert testified plaintiff saw defendant in time to reduce speed and avoid the accident.
[[Image here]]
The jury deliberated regarding the issue of liability only and found plaintiff 75% at fault and defendant 25% at fault.
It is clear that the defendant was at fault in attempting to cross two superior southbound lanes of travel without first determining the way was clear in the northbound lanes.
It appears that the jury believed defendant’s expert in finding plaintiff also at fault for not reducing his speed of travel after he saw defendant’s truck proceed into the intersection.
Plaintiff presented no expert testimony to rebut the findings of defendant’s expert.
*537 | sUpon reviewing the evidence, we cannot say that the jury erred in finding that both Plaintiffs and Defendant’s negligence contributed to the accident.[3] In applying the duty/risk analysis as set forth in Mart v. Hill, 505 So.2d 1120 (La.1987), the jury could have reasonably found that Defendant’s actions as he proceeded through the intersection of U.S. 171 and LA 3226 were a cause in fact of the accident, just as it could have found that Plaintiffs conduct was also a cause in fact of the collision. Both parties, pursuant to law, owed a duty to each other. Defendant’s duty was to stop at the intersection and proceed through it only when it was safe to do so. He had an obligation to yield the right of way to those vehicles so close to the intersection “as to constitute an immediate hazard.” Plaintiff had a duty to travel through the yellow light with caution. Additionally, as the jury obviously credited the expert testimony presented, Plaintiff was under a further duty to take reasonable steps to avoid the accident once it became apparent that Defendant would not clear the intersection.[4] Based upon the evidence adduced, a trier of fact could have reasonably | ^concluded that the parties breached their respective duties. Because vehicles were approaching in the south bound lane, Defendant was forced to decelerate as he proceeded through the intersection, and Plaintiff, faced with this situation, failed to slow down. Lastly, the harm that occurred, the collision, is squarely within the scope of protection afforded by the duties breached by Plaintiff and Defendant.
Having found no error in the jury’s finding that both Plaintiffs and Defendant’s negligence contributed to the collision, we now address the issue of the jury’s apportionment of fault, which both Plaintiff and Defendant contest. As that apportionment is a factual determination, the applicable standard of review is manifest error. See Corvers v. Acme Truck Lines, 95-925 (La.App. 5 Cir. 4/16/96); 673 So.2d 1088. Pursuant to that standard, we will not disturb the fault allocation unless it is clearly wrong. See Stobart v. State Through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993).
Upon review, we cannot say that the jury was clearly wrong in its allocation of fault, as the jury could have found, based upon the evidence, that, while Defendant was negligent in the manner in which he proceeded through the intersection, Plaintiff had ample time to respond to Defendant’s deceleration. Based upon the entirety of the record, we find no manifest -error in the jury’s apparent finding that Plaintiff was more at fault in causing the accident and its consequent apportionment of 75% fault to Plaintiff and 25% to Defendant.
*538 _L1SDECREE
For the foregoing reasons, the trial court judgment is affirmed in all respects. Costs associated with this appeal are to be divided equally between the parties.
AFFIRMED.

. La.R.S. 32:101(A)(2) provides as follows regarding the proper position for left turns:
At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

. Mr. Bentley testified that an “acceleration time trial” consists of the following:
[I]t is identifying a beginning point and then an end point which you would start the zero at the begin point, the stop watch
at zero, and then when the tractor-trailer passes through the end point, then you stop the stop watch and you time how much time elapsed between those two points. And that's a time trial at a given distance.

. At the time of the accident, La.Civ.Code art. 2323 provided, as follows, regarding comparative fault:
When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injuiy, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injuiy, death or loss.

. In this regard, we note that Plaintiff urges, for the first time in his reply brief, the applicability of the sudden emergency doctrine. However, that doctrine would avail Plaintiff only if he had found himself "in a position of imminent peril and Die did] not have sufficient time to consider and weigh all of the best means available to avoid that impending danger." Babineaux v. Tollie Freightways, Inc., 628 So.2d 1327, 1330 (La.App. 3 Cir.1993). Based upon the expert testimony presented at trial, as well as Defendant’s testimony, both of which indicate that Plaintiff did have enough time within which to respond, we conclude that, had the sudden emergency defense been presented at trial, the jury could have reasonably made its finding based upon evidence which renders the doctrine inapplicable.