758 So.2d 250 (2000)
Dwayne CORMIER, et al., PlaintiffsAppellees,
v.
Alfonso G. ALBEAR, et al., DefendantsAppellants.
No. 99-1206.
Court of Appeal of Louisiana, Third Circuit.
February 2, 2000.
*252 Allen R. Ingram, Law Office of Allen R. Ingram, Lafayette, LA, Counsel For Plaintiffs/Appellees, Dwayne A. Cormier, Connie Cormier, Joshua Blake Cormier & Justin Paul Cormier.
S. Brian Perry, Breaud & Lemoine, Lafayette, LA, Counsel For Defendants/Appellants, Alfonso G. Albear, Gordy Trucking Company, Acme Truck Line, Inc. & St. Paul Fire & Marine Ins. Co.
BEFORE: DOUCET, C.J., THIBODEAUX and DECUIR, Judges.
THIBODEAUX, Judge.
Dwayne Cormier filed suit against Alfonso G. Albear, the owner and lessee of the tractor-trailer being driven by Mr. Albear, and their liability insurer, asserting that Mr. Albear was negligent in failing to perceive and yield the right of way to favored traffic at a flashing red light and stop sign. The trial court granted Mr. Cormier's motion for partial summary judgment, finding Mr. Albear solely liable for the accident. Defendants appeal. We affirm.
I.
ISSUES
We shall consider:
1. whether there are genuine issues of material fact in dispute which preclude partial summary judgment on the issue of liability;
2. whether the trial court committed legal error in granting partial summary judgment on the issue of liability and insurance coverage without apportioning fault between the parties.

II.

FACTS
On September 22, 1998, Dwayne Cormier was involved in an intersectional collision with a tractor-trailer driven by Alfonso Albear at the confluence of U.S. Highway 90 and La. Highway 675 in Iberia Parish. Highway 90 is a four-lane highway, divided by a median, that runs east-west and has a speed limit of 65 mph in the province of the intersection. Running in a north-south direction, Highway 675 is a two-lane highway. The intersection of these highways is controlled by flashing yellow caution lights for traffic on Highway 90 and by flashing red lights and stop signs for traffic on Highway 165.
Mr. Cormier was driving his Nissan Altima in a westerly direction on U.S. 90. Mr. Albear was driving an eighteen-wheel tractor-trailer loaded with casing in a southerly direction on Highway 165. The weather was clear and the roads were dry and fairly straight. The vehicles collided when the tractor-trailer attempted to cross Highway 90 in the path of Mr. Cormier's car which struck the tractor-trailer broadside just before the rear tires.
Mr. Cormier testified that he was traveling westward in the inside lane of Highway 90 with his cruise-control set at the speed limit of 65 mph when the tractor-trailer appeared in front of him, giving him only 1 to 1.5 seconds to react. He avers that the tractor-trailer did not stop at the intersection and crossed Highway 90 at approximately 40-45 mph. He testified that upon seeing the tractor-trailer, he immediately applied his brakes and ducked, just before impact.
Mr. Albear testified that he stopped at the stop sign and flashing red light and then checked for oncoming traffic but did not see the approaching car. He avers that he then attempted to cross Highway 90 at approximately 10 mph. He stated that approximately three-fourths of the way across the intersection, he checked his left side-view mirror and saw a car lodged *253 beneath the trailer just in front of his rear tires. He did not feel the impact.
After exiting his car without assistance, Mr. Cormier was treated at the scene by Acadian Ambulance Service for a small glass cut. He then returned to work. Later that day, he visited the emergency room at the Medical Center of Southwest Louisiana and was diagnosed with a cervical lumbar strain.
Mr. Cormier filed suit seeking damages against Mr. Albear, Mr. Albear's employer, R.L. Gordy Trucking Company, Acme Truck Lines, Inc., and St. Paul Fire Insurance Company (hereinafter "St. Paul"), asserting that he sustained severe and disabling injuries as a result of the accident. Also named as plaintiff was Mrs. Connie Cormier, individually and on behalf of the Cormiers' minor children, Joshua and Justin Cormier.
Following preliminary discovery, Mr. Cormier filed a Motion for Partial Summary Judgment on the issues of liability and insurance coverage. In his memorandum in support of summary judgment, Mr. Cormier argued that there was no genuine issue of material fact regarding defendants' liability for the accident because Mr. Albear was driving his employer's company truck at the time of the accident and had a duty to stop at the stop sign and not to cause an immediate hazard by entering the intersection in front of approaching traffic. All parties conceded that in the event the defendants were found liable, the insurance policy would be "responsive." The trial court concluded that summary judgment on the issue of insurance coverage was thereby resolved.
Turning next to the issue of liability, the trial judge articulated the following reasons for granting the Motion for Partial Summary Judgment:
I find that there is no issue of material fact, that the defendant should have stopped, should have made sure that the way was clear before he proceeded into the intersection. He had no right to proceed without making that assurance. He had no right to enter the intersection, especially if he knew that he was loaded and couldn't make it through the intersection safely. He had an obligation not to enter the intersection at all. And I find that there is no issue of material fact, that he failed to yield the right-of-way to the favored traffic lane. And I grant the Summary Judgment on the issue of liability.
In the Partial Judgment on Liability and Insurance Coverage, the trial judge found that the sole legal cause of the accident was the fault of Alfonso Albear and that St. Paul, his insurer, was liable up to the full amount of its insurance coverage.
Defendants brought this appeal seeking reversal of the summary judgment on liability and the opportunity to prove comparative fault on the part of Mr. Cormier.

III.

LAW AND DISCUSSION

Standard of Review
An appellate court reviews summary judgments de novo, applying the same criteria as the district court in determining whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State Univ., 591 So.2d 342 (La.1991). Article 966(B) of the Louisiana Code of Civil Procedure provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law.

Burden of Proof
The mover has the burden of showing that no material issues of fact exist. La.Code Civ.P. art. 966(C)(2). To satisfy this burden, the mover must present supportive evidence that the motion should be granted. Once the mover establishes a prima facie showing, the burden of production shifts to the nonmoving party to present evidence of the existence of *254 issues of material fact which preclude summary judgement. An adverse party may not rest on the pleadings but must set forth, by affidavit or otherwise, specific facts showing that there is a genuine issue for trial. La.Code Civ.P. art. 967. "Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted." Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94); 634 So.2d 1180, 1183.
Defendants argue that summary judgment on the issue of liability was inappropriate because Mr. Cormier failed to meet his burden of proving that no genuine issues of material fact exist. Specifically, Defendants argue that Mr. Cormier did not meet his burden of proof regarding liability because there is a genuine issue of material fact as to his comparative fault.

Duty-Risk Analysis
Louisiana courts use a duty-risk analysis in negligence cases to determine whether liability exists under the facts of a particular case. "Under this analysis, a plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." LeJeune v. Union Pacific R.R., 97-1843, p. 6 (La.4/14/98); 712 So.2d 491, 494. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. Id.
The first step in determining liability under the duty-risk analysis is to determine cause in fact which essentially involves a "but for" inquiry. Indubitably, the accident would not have occurred had Mr. Albear not failed to yield the right of way to traffic on the favored highway and driven his fully loaded tractor-trailer into the intersection, despite a stop sign and a flashing red light, directly in the path of oncoming traffic. In granting the summary judgment motion, the trial court concluded that Mr. Albear's breach of duty was a cause-in-fact of the plaintiff's damages. We, too, agree with that finding.
A driver's duty at a stop sign is articulated in La.R.S. 32:123, which provides, in pertinent part:
A. Preferential right of way at an intersection may be indicated by stop signs or yield signs.
B. Except when directed to proceed by a police officer or traffic-control signal, every driver and operator of a vehicle approaching a stop intersection indicated by a stop sign shall stop before entering the cross walk on the near side at a clearly marked stop line, but if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering the intersection. After having stopped, the driver shall yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely on said highway as to constitute an immediate hazard.
Louisiana Revised Statutes 32:234(A)(1) sets forth the duty of motorists approaching red flashing signals:
A. Whenever an illuminated flashing red or yellow signal is used in a traffic sign or signal, it shall require obedience by vehicular traffic as follows:
1. FLASHING RED (STOP SIGNAL) When a red lens is illuminated with rapid intermittent flashes, drivers of vehicles shall stop before entering the nearest cross-walk at an intersection or at a limit line when marked, or, if none, then before entering the intersection, and the right to proceed shall be subject to the rules applicable after making a stop at a stop sign.
Before entering the intersection, Mr. Albear had "a duty to come to a complete stop, to appraise traffic on the *255 intersecting street, and to make certain the way was clear for passage." Tatum v. Old Republic Ins. Co., 94-157, p. 5 (La. App. 3 Cir. 10/5/94); 643 So.2d 419, 422, writ denied, 94-2722 (La.1/6/95); 648 So.2d 929; Vallery v. State, Dep't of Transp. and Dev., 480 So.2d 818 (La.App. 3 Cir.1985), writ denied, 481 So.2d 1350 (La.1986). "If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen, and the court examines his subsequent conduct on the premise that he did see what he should have seen." Sanchez Fernandez v. General Motors Corp., 491 So.2d 633, 636-637 (La.1986).
Application of the duty-risk analysis shows that Mr. Albear's actions were the cause-in-fact of the accident, that he had a duty to yield the right of way to favored traffic and that he breached that duty. Under these circumstances, there is no genuine issue of material fact as to Mr. Albear's liability for the accident.
The doctrine of preemption allows a non-favored or inferior motorist who enters an intersection to recover where there is evidence that the inferior driver attempted to cross the favored street when he had a reasonable opportunity to cross without endangering or impeding passage of vehicles on the favored street. Semien v. State Farm Mut. Auto. Ins. Co., 398 So.2d 161 (La.App. 3 Cir.1981). We find that Mr. Albear cannot benefit from this doctrine because he failed to perceive oncoming traffic and clearly was unable to cross the street without endangering favored traffic.

Comparative Negligence
We next consider whether a reasonable factfinder could attribute any acts of comparative negligence in causing the accident to Mr. Cormier. It is first necessary to examine a motorist's duty when approaching an intersection controlled by a yellow light.
"When a yellow lens is illuminated with rapid intermittent flashes, drivers of vehicles may proceed through or past such signal only with caution." La.R.S. 32:234(A)(2). Although a motorist on a favored street is entitled to assume that the motorist on the unfavored street will obey traffic signals and stop, look and yield the right of way, upon noticing a failure to yield the right of way, the motorist on the favored street has a duty to take reasonable steps to avoid an accident if afforded reasonable opportunity to do so. Sanchez Fernandez v. General Motors Corp., 491 So.2d 633 (La.1986); Thomas v. Midland Risk Ins. Co., 98-1950 (La.App. 3 Cir. 5/5/99); 731 So.2d 532. Thus, a favored motorist has a duty to exercise ordinary care regarding drivers entering from side streets. Tatum, 643 So.2d 419.
The evidence here shows that Mr. Cormier exercised the proper degree of care when approaching the intersection. He stated that he was driving the speed limit when the tractor-trailer appeared before him, allowing him only enough time to apply his brakes and duck. Mr. Albear stated that he simply did not see the approaching vehicle. Although there is some disagreement over the speed at which the tractor-trailer entered the intersection, it is insufficient to attribute fault to Mr. Cormier. Under these circumstances, we find that there is no genuine issue of material fact regarding Mr. Albear's sole responsibility for causing the accident and injuries.

Apportionment of Fault
Lastly, defendants argue that the trial court erred in failing to make specific findings concerning the apportionment of fault. They cite La.Code Civ.P. arts. 1812 and 1917 and Johnson v. State Farm Mut. Auto. Ins. Co., 95-1027 (La. App. 5 Cir. 5/15/96); 675 So.2d 1161, for the proposition that a judge in a non-jury case concerning delictual damages is required to make specific findings regarding the apportionment of fault. Article 1812 which addresses special verdict forms for juries is inapposite. Article 1917 provides, in part:
In nonjury cases to recover damages for injury, death or loss, whether or not requested to do so by a party, the court *256 shall make specific findings that shall include those matters to which reference is made in Paragraph C of Article 1812 of this Code. These findings need not include reasons for judgment.
We find this argument to be without merit. Article 1917 refers specifically to "nonjury cases." This case is set to be tried before a jury. Furthermore, La. Code Civ.P. arts. 1812 and 1917 apply to situations where the merits have been litigated in a full trial; they do not refer, in our view, to pre-trial proceedings. Moreover, since summary judgments are reviewed de novo by an appellate court, it is not necessary for a trial court to articulate reasons for its findings (although it is entirely appropriate and may, in some instances, be helpful). However, even if we were to apply Articles 1812 and 1917, that application would be unavailing to the defendants. The trial court found Mr. Albear to be the sole cause of the accident, which means that he is apportioned one hundred percent of the fault. Upon reviewing the record, we cannot find that a reasonable factfinder could reach any other conclusion. We cannot perceive under the facts of this case that by driving in the proper lane of travel at the legal speed limit with the right of way, Mr. Cormier's action were either the proximate cause or a contributing factor to the accident.
Plaintiffs have met their burden of proving that no genuine issues of material fact exist regarding the defendants' liability and insurance coverage. Defendants have failed to produce evidence sufficient to controvert this showing.

IV.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED.