LPETERS, J.
The plaintiffs in this litigation appeal the grant of a summary judgment by the trial court dismissing their suit. The defendants have-answered the appeal, asserting that the trial court erred in not finding that’ the plaintiffs’ claims had prescribed. For the following reasons, we reverse the *216 trial court’s judgment, reject the defendants’ appeal, and remand the matter for further proceedings.
On October 24,1997, Kim LaFleur King, Charles Raymond King, Jr., and Annette LaFleur and Laral LaFleur, as legal guardians of Alex Jude LaFleur, filed this suit seeking to recover damages from State Farm Fire and Casualty Company and State Farm Mutual Automobile Insurance Company (hereinafter collectively referred to as State Farm), Ronny Bryant, and Diana Provenzano for the intentional infliction of emotional distress caused Kim LaFleur King during her employment with State Farm. Charles Raymond King, Jr., is Mrs. King’s husband, and Alex Jude La-Fleur is Mrs. King’s biological child. Mrs. King seeks to recover for her physical and mental suffering, while both Mr. King and Alex seek to recover consortium damages.
Mrs. King began an employment relationship with State Farm on April 30,1990, which lasted through October 25, 1996. Ms. Provenzano directly supervised her employment activities in the Lake Charles, Louisiana office of State Farm until May of 1994. At that time, Ms. Provenzano received a promotion to supervisor of a larger area, which included the Lake Charles office. The acceptance of this promotion required that she transfer to the Monroe, Louisiana office of State Farm. Mr. Bryant replaced her as the supervisor of the Lake Charles office. Mr. Bryant remained Mrs. King’s immediate supervisor until she was fired in October of 1996.
In their October 24, 1997 petition, the plaintiffs asserted that the defendants terminated Mrs. King’s employment “after a continuing pattern of torture and [^intentional infliction of emotional distress that resulted in the aggravation of [Mrs. King’s] chronic Crohn’s diseasé and mental depression.” In their ten-page petition, the plaintiffs describe a series of.events occurring between Ms. Provenzano’s departure from the Lake Charles office and Mrs. King’s termination of employment, the asserted basis of Mrs. King’s claim.
After completion of extensive discovery by both sides, the defendants, on June 4, 2001, filed a motion for summary judgment. The grant of this motion and the dismissal of the plaintiffs’ claims by the trial court form the subject of this appeal.

Scope of Review

Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s consideration of whether or not summary judgment is appropriate in any given case. Cormier v. Albear, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. In Babin v. Winn-Dixie Louisiana, Inc., 00-0078, pp. 3-4 (La.6/30/00), 764 So.2d 37, 39-40, the Louisiana Supreme Court addressed the conditions under which summary judgment should be granted.
A motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B). This article was amended in 1996 to provide that “summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action ... The procedure is favored and shall be construed to accomplish these ends.” La.Code Civ. P. art. 966(A)(2). In 1997, the legislature enacted La. Code Civ. P. art. 966(C)(2), which further clarified the burden of proof in summary judgment proceedings, providing:
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court *217 on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point 13out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or de- . fense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
This amendment, which closely parallels the language of Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), first places the burden of producing evidence at the hearing on the motion for summary judgment on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) ■ must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. See MáRaist and Lemmon, Louisiana Civil Law Treatise-. Civil ProCeduee, § 6.8 (1999). Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Hayes v. Autin, 96-287 (La.App. 3d Cir.12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
Both sides filed voluminous material in the form of deposition excerpts and documents in support of their respective positions. Without attempting to summarize these extensive exhibits, it is sufficient to say that they establish numerous contested issues of fact, both in substance and interpretation.

Burden of Proof in Establishing Intentional Infliction of Emotional Distress

A plaintiff attempting to recover damages for intentional infliction of emotional distress must establish three elements:
(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe, emotional distress or knew that severe emotional distress would be certain or ' substantially certain to result from his conduct.
White v. Monsanto Co., 585 So.2d 1205, 1209 (La.1991).
Activity in the Louisiana workplace environment can give rise to a cause of action for | ¿intentional infliction of emotional distress, but “this state’s jurisprudence has limited the cause of action to cases which involve a pattern of deliberate, repeated harassment over a period of time.” Nicholas v. Allstate Ins. Co., 99-2522, p. 14 (La.8/31/00), 765 So.2d 1017, 1026.

Allegations in the Plaintiffs’ Petition

The plaintiffs assert that Mrs. King’s problems began with Ms. Provenzano’s promotion. ■ Mrs. King was out of the Lake Charles office working “storm duty” when Mr. Bryant replaced Ms. Provenzano as supervisor of the Lake Charles office in mid-1994. When she returned at the end of the summer, Mr. Bryant immediately began accusing her of improperly closing various files. Without performing any sig *218 nificant investigation, Mr. Bryant gave her a letter of reprimand and refused to further investigate the file closings. When he was later informed that his personal secretary had closed the files in question, Mr. Bryant refused to apologize for falsely accusing her and became upset that she had challenged his authority in the matter.
Thereafter, Mrs. King “was inundated” with customer complaints involving files that were missing from her office. A discussion with other adjusters revealed that she was the only one with missing files. When she reported these missing files to Mr. Bryant and Ms. Provenzano, she discovered that, without notifying her, they had pulled these files from her work assignments and later accused her of improperly handling them. When she returned from sick leave after surgery, Mr. Bryant informed her that the “investigation” concerning these files had revealed no wrongdoing on her part, although he had no basis for the investigation other than his irritation over Mrs. King questioning his authority concerning the investigation of the closed files.
|sThe plaintiffs also complain that Mr. Bryant questioned her need for medical attention on various occasions. However, he did not do so by questioning Mrs. King. Instead, he called her physician’s office seeking information concerning her physical condition. In doing so, he caused Mrs. King humiliation and embarrassment within the physician’s office staff.
As these instances continued to accumulate, Mrs. King attempted to contact Ms. Provenzano, who had previously been both her mentor and personal friend. Instead of keeping their conversations in confidence, as was required by the company’s “open-door policy,” Ms. Provenzano reported Mrs. King’s complaints to Mr. Bryant. This simply created more difficulties between Mrs. King and Mr. Bryant.,
On one occasion, Mr. Bryant “demanded” that Mrs. King return to work before release by her doctor with the promise that a staff assistant would do all of her writing and typing. However, after only two days, and with her hand still in a splint, he insisted that she do her own typing. Despite the fact that her surgery had caused her handwriting to worsen, Mr. Bryant “chided” her about the quality of her handwriting and made this deficiency the subject of a number of written reprimands.
Additionally, Mr. Bryant made a habit of criticizing Mrs. King for minor infractions such as bent corners on papers, post-it notes and loose staples in files, and the length of telephone conversations with clients. On one occasion, Mr. Bryant reprimanded her for allowing her husband to call the office and report that she was ill. According to Mr. Bryant, she should have done so herself. These infractions became the basis of informal counseling sessions. Comments by Mr. Bryant in front of other employees concerning Mrs. King’s dressing habits caused her additional embarrassment and humiliation.
| fiThe plaintiffs further alleged that Mr. Bryant subdivided the area under his jurisdiction, and despite written recommendations that Mrs. King' be given the Lake Charles area, Mr. Bryant assigned her a rural area. Because of her underlying Crohn’s disease, this assignment caused her physical difficulties. Being out of the Lake Charles office to cover her rural area precluded Mrs. Kang from keeping up with her paperwork, giving rise to more complaints from Mr. Bryant and more informal counseling sessions.
On one particular occasion, Mr. Bryant accused Mrs. King of disloyalty and dishonesty because she allowed a roofer to inspect a roof and submitted a photograph *219 from the roofer’s camera instead of taking her own. However, when it became apparent that other adjusters had acted in the same manner, Mr. Bryant withdrew his reprimand.
All of these difficulties resulted in a July 6, 1995 meeting wherein Ms. Provenzano and Mr. Bryant informed Mrs. King that she was “a disgrace to the company” and that she had “an infidelity problem.” According to the petition, the two supervisors suggested that she should quit immediately. Thereafter, memos and written reprimands continued' to flow concerning minor deficiencies.
In May of 1996,' Mrs. King’s health required a total hysterectomy, partially from complications related to Crohn’s- disease. During her period of recuperation, Ms. Provenzano and Mr. Bryant again summoned Mrs. King to Mr. Bryant’s office to “discuss her future with the company.” Despite her weakened physical and mental condition, they insisted that she appear. During the meeting, the two supervisors attempted to talk Mrs. King into accepting a severance package. She refused the severance package, and, soon thereafter, her employment was terminated.
|7The plaintiffs further assert that Mrs. King suffers from Crohn’s disease, a fact known to the defendants because, when she first came to work, she was excluded from insurance coverage for one year;-and that she had personally discussed her medical condition with both Ms. Provenza-no and Mr. Bryant. According to the plaintiffs, the defendants were well aware that stress aggravated the disease and that their actions were purposely intended to do so. The various counseling sessions often resulted in Mrs. King becoming gravely nauseated, resulting in her having to quickly retreat to the bathroom. On at least one occasion, she became so ill that she required the assistance of two co-employees to walk to the bathroom. Most of the medical attention required during this period of time, according to Mrs. King, arose because of her treatment by the defendants. In other words, she contends that the defendants used her Crohn’s disease as a means of making her employment so, intolerable that she could not continue. This “extreme and outrageous conduct” forms the basis of the plaintiffs’ cause of action.

Defendants’ Motion for Summary Judgment

Most of the excerpts from discovery depositions submitted in support of the defendants’ motion for summary judgment constituted an attempt to establish that the actions of Ms. Provenzano and Mr. Bryant were ordinary business decisions made without knowledge of Mrs. King’s medical condition, and certainly without intent to harm her. However, some of the deposition testimony contradicts other testimony relied on by the defendants.
Mr. Bryant testified that he initially found Mrs. King to be “playful” as she teased him about his dress, his organizational style, and his frugal nature. While recalling many of-the events described in the plaintiffs’ petition, he denied the context | «of the events as described. Concerning the assignment to Mrs. King of the rural area, he recalls that Mrs. King insisted on the area as she did not wish to have preferential treatment. He assigned her to the territory because he did not believe her work-product was what it was supposed to be, although he had only been working with her for one and one-half months at the time. This assignment also occurred despite the fact that he had received-information from a company source that Mrs. King suffered from Crohn’s disease, and that her “disease [had] reactivated.”
Mr. Bryant denied telephoning Mrs. King’s physician, but acknowledged that *220 some telephone calls had been made by others within the State Farm organization. When questioned concerning the motivation for the telephone ¿'alls, he professed to have a lack of memory. In fact, many of Mr. Bryant’s answers to questions concerning factual issues were, not that 'he denied the events, but simply that he did not recall.
Ms. Provenzano also had a limited recollection of the events leading up to Mrs. King’s employment termination. She acknowledged that she and a representative of the Human Resources section of State Farm met with Mrs. Ring in May of 1996 to discuss the company’s reorganization process and that, at the meeting, the representative told Mrs. King that her years of counseling would weigh heavily against her in considering whether she should be allowed to remain with the company.
Concerning the placement of Mrs. King into formal counseling in April of 1995, Ms. Provenzano recalled little more than that the decision was made after review of certain personnel reports. In- doing so, she accepted all information supplied to her by Mr. Bryant as fact. Still, she had to admit that, during the time |9Mrs. King was being accused of having problems with her files, she was closing as many, if not more, than most of the adjusters in the Lake Charles office. As to most of the other allegations found in the petition, she either has no specific recollection of the event or denies that it happened as suggested by Mrs. King.
The defendants also filed an excerpt from the deposition of Deiedra Babineaux, an employee in the Lake Charles office during the time at issue. According to Ms. Babineaux, Mrs. King and Mr. Bryant were totally different personalities. While Mr. Bryant was very organized and almost “militant” and “inflexible” in his management approach, Mrs. King was very laid back. Despite Mrs. King’s approach, however, Ms. Babineaux considered her as one who knew her files and handled her case load. Apparently, very early in the relationship, friction between Mrs. King and Mr. Bryant rose to such a level that it became a discussion point within the office. According to Ms. Babineaux, Mr. Bryant treated his personal secretary differently from everyone else and effectively prohibited any criticism of her. It was Ms. Babineaux who was- able to trace the closed filed to Mr. Bryant’s secretary and not Mrs. King. Rather than apologize to Mrs. King and chastise his secretary, Mr. Bryant simply stated that, the matter was to be dropped.
Ms. Babineaux’s testimony conflicts with Mr. Bryant’s concerning communication with Mrs. King’s physician. While Mr. Bryant denied personally contacting the doctor, Ms. Babineaux testified that she overheard Mr. Bryant speaking with the doctor’s office. On one occasion, Mr. Bryant’s personal secretary even expressed to her that she doubted if Mrs. King had even had surgery.
The .other deposition exeei-pts filed by the defendants in support of their motion for summary judgment do little to resolve the obvious factual conflicts existing within |inthe record. Most appear to have been filed for the purpose of attempting to establish that the defendants’ actions, if true, were not extreme and outrageous or that Mrs. King did not suffer any sever emotional distress.

Plaintiffs’ Response to Motion to Summary Judgment

Many of the deposition excerpts and documents submitted in opposition to the defendants’ motion for summary judgment provided the same information as those submitted by the defendants. In Ms. Pro-venzano’s deposition testimony, she acknowledged knowing of Mrs. King’s medi *221 cal situation before her own promotion and transfer to Monroe. Additionally, during her supervision of Mrs. King, she issued a written evaluation in conjunction with a promotion opportunity wherein she concluded that Mrs. King had “mastered the casualty area and has moved into the property area. She has been successful in handling large property losses. Kim’s strength lies in her people skills, customer service, and negotiation skills. She has developed into a well-rounded .adjuster within the last six months.” In addition, she concluded in the recommendation that Mrs. King had good people skills and a solid casualty background. Despite having reduced this recommendation to writing, Ms. Provenzano could not even remember having filled out the recommendation form. However, she did acknowledge that she kept a separate file on Mrs. King as did Mr. Bryant and that others within the State Farm organization might have done so as well.
The deposition excerpts from Mr. Bryant’s testimony appear to highlight more conflicts in the various events giving rise to the litigation. Although Mrs. King testified that she and Mr. Bryant discussed Crohn’s disease and that Mr. Bryant informed her that his step-father had the disease, Mr. Bryant acknowledges that his step-father had the disease, but denies having discussed the matter with Mrs. King. 1 ^Furthermore, he denied having acquired any specific knowledge about the disease through this personal experience.
While he did recall conversations wherein Mrs. King appeared upset, he could not remember any specific conversation and denies ever being aware that she became physically ill as a result of the conversation. Although he also kept an individual file on Mrs. King for “a host of different reasons,” he could not produce the file in discovery, claiming it had been turned over to the Human Resources division of State Farm.

Action of the Trial Court

In its brief written reasons for judgment, the trial court stated the following:
The Court in looking at the standards set by Nicholas [, 765 So.2d 1017,] as well as the examples given as to what conduct is determined or expected to be extreme and outrageous, feels that the conduct of the defendants in this case at bar was not outrageous nor extreme by definition. Further, there was no evidence submitted to show that at any time the defendants herein intentionally wish[ed] to cause harm to the plaintiff.
Thus, in reaching this conclusion, the trial court found that the plaintiffs would be unsuccessful in establishing both the first and third prong of the three-prong test established in White, 585 So.2d 1205. However, the trial court did not elaborate any further than the language set forth above.
OPINION
Because the trial court concluded as a matter of law that the conduct complained of by the plaintiffs is not extreme or outrageous, it follows that the trial court accepted, for the purpose of deciding the motion for summary judgment, all of the plaintiffs’ allegations as being true. After doing so, the trial court applied the supreme court’s holding in Nicholas, 765 So.2d 1017, particularly using the examples 112related therein. While we recognize the persuasive nature of the Nicholas decision, we find that it is does not stand for the position suggested by the trial court and, furthermore, is procedurally distinguishable from the matter before us.
Nicholas presents a thorough analysis of the applicable law on the tort of intentional infliction of emotional distress arising from *222 the work-place environment In doing so, the supreme court reasserted its decision in White, 585 So.2d 1205, and evaluated jurisprudence from this state, as well as other states, to effect an analysis of decisions involving this cause of action. The opinion contains numerous examples of what does and what does not constitute acts of intentional infliction of emotional distress. Furthermore, the opinion explains the rationale behind requiring something more than merely tortuous or even illegal acts to constitute intentional infliction of emotional distress in the workplace environment. However, that which clearly does establish a cause of action for intentional infliction of emotional distress is a case wherein the alleged activity constitutes a deliberate pattern over a period of time. Such a situation is that which is alleged in the matter before us. Thus, we conclude that the trial court erred in concluding that, as a matter of law, the defendants’ actions did not constitute extreme and outrageous conduct.
We also conclude that the trial court erred in finding that there was no evidence that the defendants intended to harm Mrs. King. As previously stated, the record is replete with contested issues of fact. Certainly these contested issues of fact constitute factual disputes in the context of an action for intentional infliction of emotional distress as the materiality question is usually determined according to the substantive law applicable to the case. See Spears v. Bradford, 94-0892, 94-0893 (La.App. 1 Cir. 3/3/95), 652 So.2d 628.
|isln reaching its decision, the trial court resolved factual disputes arising from the conflicting evidence presented. The summary judgment process does not contemplate that factual disputes be resolved based on conflicting filings. In any event, given the internal contradictions of the defendants’ evidentiary presentations, we do not conclude that the defendants overcame their initial burden of proof such as to shift the burden to the plaintiffs and find that the trial court erred in granting the motion for summary judgment on the basis that the plaintiffs could not establish the third prong of the White test.

Answer to Appeal

In their answer to the plaintiffs’ appeal, the defendants assert that the trial court erred in not dismissing the plaintiffs’ claims on the basis of prescription. For the following reasons, we find no merit in this assertion.
Pursuant to a scheduling order issued on July 18, 2001, the trial court heard the motion for summary judgment on August 22, 2001. The scheduling order made no mention of an exception of prescription. In fact, we find no evidence in the record of an exception of prescription having even been filed. The court minutes of August 22, 2001, mention only that the trial court considered the motion for summary judgment and dismissed the plaintiffs’ suit at their costs. While counsel for the defendants mentioned a “Motion to Dismiss on prescription grounds” and argued that the matter was not a continuing tort at the August 22 hearing, the trial court properly considered only the summary judgment issue before it.
In reaching its decision, the trial court stated that it “[was] not reviewing the issue of prescription at [that] point.” Thus, the trial court did not reject any pending exception of prescription, but simply chose not to decide the issue because it had |ualready rendered judgment dismissing the plaintiffs’ suit pursuant to the motion for summary judgment. Thus, no judgment exists for this court to review. See La.Code Civ.P. art.2082.
*223 DISPOSITION
For the foregoing reasons, we reverse the trial court’s grant of a summary judgment dismissing the plaintiffs’ demands. Additionally, we reject the request for relief by the defendants in their answer to the appeal and remand this matter to the trial court for further proceedings. We tax all costs of this appeal to the defendants, State Farm Fire and Casualty Company, State Farm Mutual Automobile Insurance Company, Ronny Bryant, and Diana Provenzano.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
WOODARD, J., concurs and assigns written reasons.